FLORENCE J. BAILEY, ADMX., *v.* CENTRAL VERMONT RAILWAY, INC.

May Term, 1943.

On Motion for Reargument, October Term, 1943.
Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed November 2, 1943.

Opinion on Motion for Reargument filed January 4, 1944.

434

*Horace H. Powers* for the defendant.

*T. Tracy Lawson* and *McNamara & Larrow* for the plaintiff.

JEFFORDS, J. After remand of this cause from the Supreme Court of the United States, where our judgment for the defendant, upon the ground that defendant's motion for a directed verdict should have been granted (see 113 Vt 8, 28 A2d 639), was reversed, that Court being of the opinion that there was sufficient evidence to go to the jury on the question whether the defendant was negligent in failing to use reasonable care in furnishing plaintiff's intestate with a safe place to work, the defendant was given leave to further argue such of its exceptions as were not disposed of in our former opinion or inconsistent with the decision of that Court. At the hearing for such further argument our attention was called directly to the exceptions now relied upon, and all other exceptions were waived.

The defendant excepted to the reception in evidence of a Swaco safety hopper car wrench as an exhibit. It was objected to upon the grounds that the defendant was not obliged to furnish the latest, best or safest appliances, that the evidence was that the frog wrench furnished had done the work safely and adequately, and that there was testimony in the case that the Swaco wrench if improperly used would be dangerous. In our former opinion we held, in substance, that there was no evidence that the frog wrench

was not reasonably safe and suitable for use in opening hopper cars and thus there was no evidence in the case, viewed most favorably for the plaintiff, to warrant the submission of the issue of failure to furnish proper tools to the jury. This holding was not disturbed by the Supreme Court and the defendant now urges that consequently the law of the case shows conclusively that the court erred in admitting the wrench as an exhibit. The defendant misconstrues the effect of the holding which goes no farther than to show error in the submission of the issue of failure to furnish proper tools. If the construction claimed by the defendant is to be accepted it would have the effect of requiring a trial court not only to correctly evaluate the result of the state of the evidence on any given issue before submitting the same to the jury but to anticipate correctly the final result from the very start of introduction of testimony on that issue. This is not and should not be the rule. The ruling here must be tested as of the time it was made and in view of the situation then confronting the trial court.

 The wrench was offered near the close of the plaintiff's case after a discussion between the court and counsel as to evidence which had been introduced in regard to "the method of using it." It was received upon the strength of this evidence, especially that part of the same to the effect that in the use of this wrench the nut turns within it. As indicated in our former opinion, there had been considerable evidence introduced in regard to the use and operation of this wrench. Most of this evidence had come in without exception. The issue to which it pertained was whether the frog wrench was a reasonably proper tool to be furnished for the work under the circumstances disclosed. In view of this evidence and as having a relative bearing on this issue the jury were entitled to see and examine the ratchet wrench, and compare it with the frog wrench which had been admitted as an exhibit. The fact that there was evidence in the case to the effect that the Swaco wrench if improperly used was dangerous merely went to the weight to be given to it and did not affect its admissibility. Nor was the evidence to the effect that the frog wrench had been used to open hoppers safely and adequately in the past conclusive evidence that it was reasonably safe and suitable. *Geno* v. *Fall Mountain Paper Co.*, 68 Vt 568, 35 A 475. The plaintiff did not claim that the defendant was obliged to furnish the latest, best or safest appliances or that the Swaco wrench was such. Although the facts are

different, the principle is the same here as in *Cole* v. *Danville Coop. Creamery Assn.,* 103 Vt 32, 41, 42, 151 A 568. We hold there was no error in admitting the Swaco wrench as an exhibit. Moreover, if there had been error, it would have been rendered harmless by the introduction of the evidence without exception describing the wrench and its use. *Ellison* v. *Colby,* 110 Vt 431, 437, 8 A2d 637; *State* v. *Orlandi,* 106 Vt 165, 173, 170 A 908.

The defendant excepted to evidence of a section foreman that the defendant had to furnish a right of way under its tracks, and to evidence of the previous dumping of rocks upon the roadway below the bridge where the accident happened. In view of the amendment of August 11, 1939, to the Federal Employers' Liability Act, providing: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce * * * shall, for the purpose of this Act, be considered as being employed by such carrier in such commerce and shall be entitled to the benefits of this Act", it would seem to make no difference as to whether the defendant was under any duty to maintain the roadway below the dry bridge. The general duties of plaintiff's intestate as a section hand were in furtherance of interstate commerce, so whatever work he did for the defendant was covered by the Act. If any error was made here it was harmless.

Over the objection and exceptions of the defendant one of the section hands was permitted to testify that he heard someone say "We have got just five minutes to unload this car". He was unable to say who made the remark, and further testified that he did not see any hurry about unloading and that nobody was in any hurry. The defendant has not briefed the question as to whether, to make such a remark admissible upon the charge that insufficient time was allowed for this operation, it must be shown that it was made by someone in authority, and we do not consider it. If error, harm is not made to appear.

The defendant excepted to the failure of the court to charge as requested as follows: "If you find that this wrench which was used by Bailey had been used for many years to open hopper cars and that no one had ever been hurt by it, you must find that reasonably adequate tools had been furnished to this plaintiff's intestate, and that no negligence lies on the defendant with respect

to the furnishing of improper tools". As the former opinion shows, the employer is under a duty to exercise ordinary care to supply appliances reasonably safe and suitable for the use of the employee, but is not required to furnish the latest, best and safest appliances, or to discard standard appliances upon discovery of later improvements, provided those in use are reasonably safe and suitable. The request is faulty in that the matters stated are only evidence that the wrench was reasonably safe and suitable. They are not conclusive. This is illustrated in *Geno* v. *Fall Mountain Paper Co.,* 68 Vt 568, 35 A 475. There the defendant contended that an employer is not obliged to furnish the best machinery, but only such machinery as is ordinarily used, but the Court at p. 576, 35 A 478, said "That a machine is in common use is at the most a circumstance bearing upon the question of negligence."

The defendant excepted to the failure of the court to charge as requested as follows: "Even though you find negligence on the part of this defendant, unless you find that such negligence was the proximate cause of the accident, the plaintiff cannot recover". This request was complied with.

The defendant excepted to the failure of the court to charge as requested as follows: "If you find that the reason for the accident was the improper use of the wrench by plaintiff's intestate, you must find for the defendant". The defendant in its brief construes this request as meaning that if the jury found the sole proximate cause of the accident was the negligent use of the wrench by Bailey there could be no recovery. We adopt this construction for the purpose of the treatment of this exception.

This request is defective in that it fails to point out with sufficient clearness the circumstances under which the jury could only properly find that Bailey's negligence in the use of the wrench, if they found that to be the fact, was the sole proximate cause of the accident. The trial court held there was sufficient evidence to go to the jury on the question whether the defendant was negligent in failing to use reasonable care in furnishing Bailey with a safe place to work. Thus the request to have been properly phrased should have had incorporated therein statements to the effect that in order to find that Bailey's negligence in the respect claimed was the sole proximate cause of the accident they must find that it, of itself, without regard to, and independent of, any negligence on the part of the defendant in respect to a safe place caused the ac-

cident. The request as worded would have tended to confuse rather than help the jury on this issue of sole proximate cause.

In addition, it is clear that the evidence in the case did not warrant the request and thus the failure to comply therewith was not error. *State* v. *Corologos,* 101 Vt 300, 306, 143 A 284, 59 ALR 1541; *Landry* v. *Hubert,* 100 Vt 268, 282, 137 A 97. As indicated in our former opinion, the evidence tends to show a proper rather than negligent use of the wrench by Bailey for it is therein shown that in applying the wrench to the nut and pulling back so that the dog could be released he performed the operation correctly and his later pushing the handle of the wrench from him showed that he knew the shaft must turn away from him to let the door open. Stone, who was the only witness to testify as to the use of the wrench by Bailey, was of the opinion that the latter acted as if he knew how to operate the wrench in opening a hopper. This witness also testified that he could not say whether Bailey had his hands on the wrench when "it started" and that he could not tell what made Bailey go off the bridge; that he knew the deceased "must have had the wrench in his hand, but whether the wrench was what threw him over, I couldn't say, because I was watching the nut on the car." If Stone's statement that he knew Bailey "must have had the wrench in his hand" is to be taken as meaning as of the time he fell off from the bridge it is apparent that it is merely his conclusion in this respect as he had testified that he was not watching Bailey at that time.

Lashua, one of the workmen, testified as follows, in answer to a question asking him to tell the jury what was done in the way of unloading the car:

> "Well, they backed the car out, pulled the car out onto the underpass and then the wrench was gotten and Mr. Bailey went out onto the bridge to open the pocket of the car, and in doing so his wrench got away from him, or slipped, or something and he got off his balance, or else the wrench pulled him over, one or the other and losing his balance he fell off the bridge."

It is apparent that this witness was only giving his conclusions as to what caused Bailey to fall.

The defendant refers us in its brief to no evidence which would support the request.

It would seem that the only possible negligent acts on the part of Bailey in the operation of the wrench which could have contributed to the accident would have been either his holding on to the wrench when the hopper started to open instead of letting go of it or in pushing so hard on the wrench that he lost his balance. As we have seen, the evidence is silent on this point so at the most this negligence must be inferred. But the evidence of the proper operation of the wrench stands against these inferences of negligent acts and makes them extremely doubtful, speculative and of no probative value.

■ ·Moreover, all the evidence shows is that when the hopper opened Bailey fell in such manner that he may have been pulled over by the wrench. As far as appears, no witness could testify whether he slipped, got off balance in pushing on the wrench, or was pulled over by the wrench. This left a mere possibility that he was pulled over by the wrench or was thrown off balance by pushing too hard on it and that alone would not have warranted a finding that the accident was caused by either of these two acts. *Burton* v. *Holden & Martin Lumber Co.,* 112 Vt 17, 19, 20, 20 A2d 99; *Wellman, Admr,* v. *Wales,* 98 Vt 437, 440, 129 A 317.

We have shown there was no evidence in the case nor any reasonable or probable inference to be drawn from the evidence that negligent use of the wrench by Bailey contributed to the accident. It follows, *a fortiori,* a finding that negligent use of the wrench was the *sole* proximate cause of the accident would also have been based on mere speculation or conjecture which we have held many times are insufficient foundations for a verdict. *Jacobs* v. *Clark,* 112 Vt 484, 489, 28 A2d 369; *Perkins* v. *Vt. Hydro-Electric Corp.,* 106 Vt 367, 399, 177 A 631; *Wellman* v. *Wales, supra.*

The jury returned a verdict for the plaintiff to recover a lump sum which was in the usual form except that over the foreman's signature was inserted, "We apportion the damages as follows," followed by the names of the widow and three minor children with sums set opposite each, which add up to the exact amount of the total sum awarded. The court had instructed the jury to apportion, telling them that if they found for the plaintiff, to ascertain the total amount that the widow and three children had lost by the death of Bailey, and then to apportion that amount among the

beneficiaries. The jury were instructed that "those amounts must equal the total amount which you decide to award in your general verdict."

After verdict and before judgment the defendant moved in arrest of judgment because of such apportionment. To the overruling of this motion the defendant excepted.

The defendant claims, in effect, that an apportionment of damages by the jury makes the verdict void. In support of this claim it relies almost entirely upon *Central Vermont R. Co.* v. *White,* 238 US 507, 35 S Ct 865, 59 L Ed 1433, Ann Cas 1916 B 252. Interpretations, varying somewhat, have been given the holdings in this case on this point by different courts but none of them that we have examined have considered the opinion has the effect claimed for it by the defendant, as indeed it has not. Without discussing the opinion on this point, it is sufficient to say that it merely holds that the Federal Employers' Liability Act does not require that the jury should apportion the damages, which is a matter properly for the probate courts and that a verdict *in solido,* the one there rendered, is not void.

Under the Act, 45 U. S. C. A. sec. 51, in the event of the employee's death, an action for damages is given to his personal representative, and him alone, for the benefit of certain dependent relatives. *American R. Co.* v. *Birch,* 224 US 547, 32 S Ct 603, 56 L Ed 879; *Mo. K & T. R. Co.* v. *Wulf,* 226 US 570, 33 S Ct 135, 57 L Ed 355; *St. Louis, S. F. & T. R. Co.* v. *Seals,* 229 US 156, 33 S Ct 651, 57 L Ed 1129; the damages recoverable are limited to such loss as results to such dependents because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the employee. The damage is limited strictly to the financial loss thus sustained. *American R. Co.* v. *Didricksen,* 227 US 145, 33 S Ct 224, 57 L Ed 456; *Gulf, C. & St. F. R. Co.* v. *McGinnis,* 228 US 173, 33 S Ct 426, 57 L Ed 785.

In this case recovery was for the benefit of the widow and three minor children. In arriving at their verdict the jury had to find the financial loss of each. There can be no question that the court had the right to submit a separate special verdict asking what was found to be the pecuniary loss of each dependent, so as to have the information at hand in case of a motion to set aside the general verdict because excessive or inadequate. See P. L. 1688. The fact that

the interrogatories were incorporated in the general verdict makes little, if any, difference.

■ Although an apportionment was unwarranted and should not be made in future cases it is not apparent that the defendant was harmed thereby. The jury were instructed to first find the total amount of damage and then to apportion the same. The various amounts equal the amount of the lump sum or general verdict. The apportionment may be treated as surplusage. It evidently was so regarded, as the court entered judgment simply for the lump sum awarded.

"It is well settled that the amount allotted to each party entitled is of no concern to the defendant unless such allotment increased the amount of the total recovery". *In re Stone,* 173 NC 208, 91 SE 852, 854. See also, *Penn. R. Co.* v. *Logansport Loan & Trust Co.,* 29 F2d 1; *I. C. R. Co.* v. *Skinner,* 177 Ky 62, 197 SW 552; *Gulf C. & S. F. Ry. Co.* v. *Carpenter,* Tex Cir App, 201 SW 270.

■ Under our rule he who alleges error has the burden of showing that he was prejudiced thereby. *Meyette* v. *Can. Pac. Ry. Co.,* 110 Vt 345, 356, 6 A2d 33. As we have seen, it is not apparent that any harm has resulted to the defendant by the apportionment. Thus error, if any, in this respect is not reversible error.

*Judgment affirmed.*

SHERBURNE, J. (dissenting). I regret that I cannot agree with the majority in the disposition of this case. I think that the admission of the Swaco wrench as an exhibit was prejudicial error. It was not received until after the plaintiff had completed her case except for some brief testimony relative to the title to the land at the bridge, in fact the plaintiff had rested except for the reservation of the right to offer this testimony and the right to offer the wrench as soon as it could be sent for and produced, and pending its arrival the court had heard defendant's motion for a directed verdict, so that the court had before it all the evidence regarding the wrench that was to be offered. Neither the previous testimony nor the wrench itself had any tendency to show that the frog wrench was not reasonably safe and suitable for use in opening hopper cars. The court had previously excluded an illustrated circular describing the wrench, and when the wrench itself was offered the court inquired if the plaintiff expected to prove that it

was much safer than the other wrench, if it just offered the wrench, or a line of proof in connection with it, and plaintiff's attorney replied: "Well, if the Court please, I doubt that under all the circumstances with which the plaintiff is faced that we can show the actual use of this wrench, this particular wrench. I have no way of determining who has used it."

Merely because some evidence had previously been received about it did not bar the defendant from excepting to its admission as an exhibit, although under our holdings the error in cases where the evidence is substantially the same as prior evidence would be harmless, but here the exhibit itself was a piece of evidence that was much more than cumulative to what had gone before. It was an intricate tool, the nature of which had not been fully explained, and could with difficulty be explained without a visual demonstration. If it influenced the jury as it did the members of this Court who dissented when this cause was first here it was probably a deciding factor in their verdict. Attention is called to the following statement in their dissent, 113 Vt at page 17,: "One of these wrenches was an exhibit in the case and it is apparent from an inspection thereof that the jury could have found that if Bailey had had such a wrench he could have made it impossible for it to pull him forward merely by shifting with his fingers the lever on the handle that controlled the ratchet."

In order to render error in admitting improper evidence harmless the other evidence must be sufficient to establish the fact involved. 4 CJ 977; 5 CJS Appeal and Error para. 1731, at page 1007. Here the other evidence did not show that if Bailey had had a Swaco wrench he could have made it impossible for it to pull him forward. Can there be any doubt that, because of the nature of this sad accident in which a young wife and three very young children had lost their husband and father, the jury would seize upon such a piece of evidence to justify a verdict in their favor?

I disagree with the conclusion of the majority about the failure of the court to charge as requested as follows: "If you find that the reason for the accident was the improper use of the wrench by plaintiff's intestate, you must find for the defendant." For the purpose of the treatment of this exception the majority opinion adopts the defendant's construction of the request, as meaning that if the jury found the sole proximate cause of the accident was the negligent use of the wrench by Bailey there could be no recovery.

I concur in this construction. I think that the evidence tended to show a negligent use of the wrench, viewing it most favorably to the defendant. No one saw what caused Bailey to fall, but he fell in such a manner, because of where and how he struck the ground below the bridge, that he must have pitched forward rather than directly sideways, as he would have done had he slipped. From this it could reasonably be inferred that either he was pulled forward by the wrench or he pushed so hard on the wrench that when the nut started . to turn he was off balance and pitched forward. If he was pulled by the wrench he hung on to it too long and was negligent in its use. If he pushed so hard on the wrench that he got off balance he was likewise negligent in its use. Because we cannot say which way it happened does not make it a mere possibility and speculation. The fair inference from the evidence viewed most favorably to the defendant is that the accident was caused in one of these two ways, and no other, and either way being the result of negligence is sufficient proof.

I do not follow what is said in the majority opinion to the effect that the request was defective, because it did not contain a statement that in order to find that Bailey's negligence in the respect claimed was the sole proximate cause of the accident the jury must find that it, of itself, without regard to, and independent of, any negligence on the part of the defendant in respect to a safe place to work, caused the accident. If Bailey's negligent use of the wrench was the sole proximate cause of the accident it necessarily follows that the place of work had nothing to do with it.

A careful examination of the charge shows that the jury were told that in order for the plaintiff to recover she must prove that the defendant was negligent, and that such negligence was the proximate cause of the accident, and that under the Federal Employers' Liability Act contributory negligence of an employee is not a bar, but only operates to reduce the damages that can be recovered. Although the jury were told that the defendant claimed that the negligence of plaintiff's intestate was the proximate cause of the accident, nowhere did the court charge that if the negligence of plaintiff's intestate was the sole cause of the accident there could be no recovery. As the former opinion in this cause shows, there was no evidence that the frog wrench was not reasonably safe and suitable for opening the hopper, and no failure of duty in respect to caution and warning was shown. It follows that if

Bailey used the wrench improperly he was negligent. If such negligence was the sole cause of the accident the defendant's negligence, if any, could not have been even a contributing cause. There is no room for the application of the rule of comparative negligence in such a case. *Great Northern R. Co.* v. *Wiles,* 240 US 444, 36 S Ct 406, 60 L Ed 732.

The court could hardly have misunderstood the force of the request. At the conclusion of its exceptions to the charge the defendant asserted that the negligence of the plaintiff may be the sole proximate cause of the accident, and stated that the court failed to instruct the jury that if the negligence of plaintiff's intestate was the proximate cause of the accident, there could be no recovery, and that even though the plaintiff and defendant were both negligent, if the plaintiff's negligence was the sole cause of the accident there could be no recovery. It was very important that the question of the negligence of plaintiff's intestate being the sole proximate cause should be clearly presented to the jury. The denial of the request, or a substantial compliance with it, was prejudicial error.

For the reasons stated I would reverse the judgment and remand the cause for a new trial.

Mr. Justice Sturtevant concurs in this dissent.

## ON MOTION FOR REARGUMENT.

JEFFORDS, J. On leave, duly obtained, counsel for the defendant has filed a motion for reargument in this case, pending which the entry of judgment has been withheld. The defendant's position in support of the motion is, briefly stated, as follows: Among the issues of negligence submitted by the trial court to the jury was that of whether the defendant had furnished Bailey with proper tools with which to work; the verdict was general; this Court held in its former opinion there was no evidence of negligence to support the above stated issue; this holding was untouched by the decision of the United States Supreme Court, that Court stating as there was evidence to go to the jury on the issue of safe place to work sufficient to support the verdict and judgment the other issues presented by the defendant were not reached; consequently as it is impossible to say whether the verdict was based on the issue of proper tools or on that of safe place to work and as it might have

been predicated on the issue not supported by evidence the case must be reversed and a new trial ordered, as a general verdict which might be based on an issue not supported by evidence cannot stand.

Counsel for the defendant now says that argument was made in respect to the effect of the Supreme Court decision in connection with the argument as to the admissibility of the Swaco wrench but he also states that the matter of the general verdict and its claimed possible lack of supporting evidence was urged as a separate and independent ground for reversal.

It is claimed that we misconceived the defendant's argument on the question whether the issue of proper tools should have been submitted to the jury; that we ignored the effect of our holding in our former opinion as to lack of evidence on the issue of proper tools; that either there was no consideration given to the point now urged for a reversal or else we misconceived "the legal effect of the general verdict based upon an issue which this Court held should not have been submitted to the jury."

The only reason advanced for the granting of the motion is the failure of the majority in the present opinion to treat the question pertaining to the validity of the general verdict and the claimed resulting error in sustaining that verdict.

We did not understand that this matter of the general verdict was orally argued. Certainly it was not briefed nor were authorities cited in its support. But if it be granted that argument was made as claimed by defendant's counsel the situation of the defendant is not improved thereby. The only exception to which it is claimed that such argument was addressed was the exception to the denial of the motion for a directed verdict. There were several grounds advanced in support of this latter motion but the only one now relied upon by counsel in the present instance was to the effect that the plaintiff had failed to prove any negligence on the part of the defendant. It was upon this latter ground, and this one only, that we, in our former opinion, based our holding of reversal and judgment for the defendant. This was the only ground of the exception to the failure to grant the motion for a directed verdict which the United States Supreme Court was called upon to consider. Thus the reversal of our former judgment for the defendant was predicated entirely upon our holding in respect to the only ground of the exception now relied upon by the defend-

ant to sustain its present motion. The Supreme Court has decided that this ground of the motion was without merit. It has cast the defendant on this point and has barred the exception, now relied upon by the defendant, as far as this ground is concerned, from further consideration. When that Court spoke this ground of the exception became *functus officio*.

Counsel for the defendant says that upon argument of the motion for a directed verdict in the lower court in support of the ground based on lack of proof of negligence he called the attention of the court to claimed deficiencies in the plaintiff's case in respect to the issue of proper tools. So he did, and he also stated other reasons in support of that ground of the motion. But it can make no difference whether the claimed defects in the plaintiff's case in respect to her claims of negligence on the part of the defendant were argued singularly or collectively in support of that ground of the motion. The ground remained the same and the effect upon it by the holding of the Supreme Court is not altered by the method employed by counsel in arguing that ground.

 In addition it should be noted that the office of a motion for a directed verdict is to secure a judgment for the party making the motion, and that is its only office. Counsel for the defendant does not claim that the now asserted ground in support of the exception to the refusal of the motion entitles the defendant to a judgment but, he says, it does entitle the defendant to a reversal and new trial. The only purpose or office of the exception as taken was to secure a review of the question of whether the defendant was entitled to a judgment. It should be apparent that the defendant cannot now use the exception for a purpose different from that for which it was originally taken. *Morgan* v. *Gould,* 96 Vt 275, 280, 119 A 517.

The defendant cites the following cases in support of its contentions: *Wilmington Mining Co.* v. *Fulton,* 205 US 60, 27 S Ct 412, 51 L Ed 708; *Erie R. R.* v. *Gallagher,* 255 F 814; *Christian* v. *B. & M. R. R.,* 109 F2d 103; *Schilling* v. *D. & H. R. R. Co.,* 114 F2d 69; *Rashaw* v. *C. V. Ry.,* 133 F2d 253. It is true that in all of these cases a reversal was ordered and a new trial granted because the verdicts were general and might have been based upon an issue not supported by any evidence. In all of these cases it would appear, however, appropriate exceptions were taken and

preserved upon which the appellate courts could predicate their reversal judgments.

There were several counts in the declaration in the Wilmington case. The defendant moved to strike three of the counts and requested the trial court to instruct the jury that there could be no recovery under these counts because there was no evidence of negligence to support the same. The court overruled the motion and refused to instruct as requested. Error was assigned because of the rulings of the court in these respects.

In the Erie case there was a request to withdraw from the jury one of the several specific charges of negligence and the error making necessary a reversal was based on the refusal to grant the request.

In the Christian case there were two claims of negligence. It was held on appeal that there was evidence to support one but not the other. Judge Patterson in the course of the opinion says:

> "The judge was in error in submitting to the jury, over the defendant's objection, the issue of negligence by the engineer of the pusher locomotive."

Thus it would appear there was either a motion or request to withdraw that issue of negligence not supported by evidence. The Wilmington and Erie cases are cited in support of the reversal order.

In the Schilling case it appears that counsel for the defendant made a motion for a directed verdict but it also is to be drawn from the wording of the opinion that counsel in one way or another attempted to persuade the trial court to withdraw from the jury certain claims of negligence which were not supported by any evidence. Here the Christian case is cited in support of the judgment.

In the Rashaw case three allegations of negligence in respect to the presence of steam at the place of the accident were held to have been improperly submitted to the jury for the reason that there was no evidence to support the same. It is not apparent from a reading of the case on what exceptions the judgment of reversal was based. An examination of the printed record discloses that counsel for the defendant made a request which was, in effect, one to withdraw from the jury the issue of steam as a ground of liabil-

ity. It is to be assumed the exception to grant that request was the basis of the judgment.

Thus it would appear that in none of the cases relied upon by the defendant were the reversals based on an exception to the refusal to grant a motion for a directed verdict. Apparently in each of these cases well recognized methods were used to raise the question of whether certain issues were supported by any reasonable evidence. It was incumbent upon counsel for the present defendant to make a motion that the issue of improper tools or appliances be withdrawn from the jury, or to request an instruction to that effect, or to take some other similar and effective course, followed by the necessary exceptions, in order to have an exception available to present for our consideration the question he now attempts to raise. That the rule is the same in the second federal circuit from whence come the last three referred to cases is shown by the late case of *Basso* v. *Palmer,* 138 F2d 914. Apparently in that case two grounds of liability of the defendant were submitted to the jury. It was held on review that the evidence to support one ground "was extremely tenuous" but that there was evidence to support the other ground which made a case for the jury. The court in the *per curiam* opinion says: "If the defendant had wished to confine its liability, it should have asked the judge to exclude the issue of suction." The judgment for the plaintiff was affirmed.

*Motion for reargument denied. Let full entry go down.*