## Alexander Jackson Et Al v. William H. Rogers Et Al

[134 A2d 620]

May Term, 1957.

Opinion Filed September 3. 1957.

*Parker & Ainsworth* for the defendants.

*R. Lawlor Cooper* for the plaintiffs.

**Cleary, J.** This litigation consists of two contract actions, one brought by the Jacksons against Rogers & Son. and the other brought by Rogers & Son against the Jacksons. Both suits are based on a written contract for the construction of a house, Plff's Exhibits 1 and 2. The Jacksons sued for failure of Rogers & Son to build the house according to the specifications and in conformity to usual building standards; Rogers & Son sued for the unpaid balance of $500 on the contract price. The suits were tried together by jury, resulting in a verdict of $950 for the Jacksons in their suit and

in a defendant's verdict in the suit brought by Rogers & Son. Judgments were entered for the Jacksons in both suits. The cases are here on Rogers & Son's exceptions.

Rogers & Son had built a large number of houses which were financed by the Federal Housing Administration and were familiar with FHA requirements. Though the FHA did not finance the Jackson's home, Rogers & Son drew the contract and specifications and, in doing so, used the same forms that were used for FHA financed contracts and specifications. The specifications stated that they included "the applicable FHA Minimum Construction Requirements" and also stated "unless otherwise described or shown, required work will be assumed to be the minimum acceptable to FHA."

Rogers & Son have briefed exceptions to admitting into evidence two portions of the FHA Minimum Property Requirements identified as 406-D3.b and 406-G2.a. These requirements provide as follows: "406-D3. Footing Drain Tile. b. Protect top of joints with strips of building paper or other material acceptable to the Chief Underwriter and cover with 1 foot of gravel or other material acceptable to the Chief Underwriter." "406G. Dampproofing and Waterproofing. 2.a. Masonry unit walls: apply ½-inch thick portland cement plaster coat over which apply at least one heavy coat of undiluted hot tar, hot asphalt or compound acceptable to Chief Underwriter."

Rogers & Son take the position that the terms of the contract as entered into by the parties, being specific as to footing drains and waterproofing, prevail over the terms of the FHA Minimum Property Requirements set forth in the admitted evidence. They cite and quote from *Allen* v. *Berkshire Mutual Fire Ins. Co.*, 105 Vt 471, 477, 168 A 698, 700, 89 ALR 460. "It is a rule of construction that when words of a particular description are followed by words of general import, the latter can be held to include only things similar in character to those specially named." But that rule is subject to the qualification that where both the general and special provisions may be given reasonable effect, both are to be retained. 17 CJS page 732, note 26; *Commonwealth*

v. *Kline*, 294 Pa 562, 144 A 750, 751; *German Fire Ins. Co.* v. *Roost*, 55 Ohio State 581, 36 LRA 236, 60 Am St Rep 711,714. No provision is to be wholly disregarded because inconsistent with other provisions unless no other reasonable construction is possible; and a special provision will be held to override a general provision only where the two cannot stand together. *German Fire Ins. Co.* v. *Roost, supra.* Here, the FHA Minimum Construction Requirements were included in the specifications and were part of the contract. A contract must be construed, if possible, so as to give effect to every part, and from the parts to form a harmonious whole. *In re Pirie Estate*, 116 Vt 159, 164-165, 71 A2d 245; *Freeguard* v. *Bingham*, 108 Vt 404, 406, 187 A 801; *Vermont Shade Roller Co.* v. *Burlington Traction Co.*, 102 Vt 489, 502, 150 A 138.

The only specific mention of footing drains in the contract is "4 inch perf. orangeburg." The Jacksons found no fault with the footing drain or with the kind of material covering it; their complaint concerned the way in which the drain was installed and the lack of 1 foot of cover over it. Their evidence tended to support their complaint. There is no mention of dampproofing in the contract. As to waterproofing the contract says "1 coat Han-a-dex; 5 gal/sq." The evidence was undisputed that such a coat was applied but that no coat of ½ inch portland cement plaster coat was applied. The Jacksons made no complaint about the overcoat of Han-a-dex; their complaint was the failure of Rogers to apply the Han-a-dex over a ½ inch thick coat of portland cement. The standard of the material used for the overcoat in the construction of the drain and of the material used for the overcoat in the masonry unit wall were not in issue. The specifications mentioned the material to be used for footing drains and for waterproofing; the FHA Minimum Requirements, to the admissiion of which exceptions are briefed, provide how the footing drains were to be covered and that Dampproofing and Waterproofing of the foundation walls should be by applying to the walls two coats, one of portland cement plaster and then an overcoat of other material. The provisions in the specifications and in the portions of the FHA requirements that were admitted into evidence were not in-

consistent with each other but each supplemented the other. It was possible to give both of them reasonable effect, so the rule that Rogers & Son quote from the Allen-Berkshire case does not apply to the case now before us.

Rogers & Son also claim that the admitted evidence interjects another standard, namely "other material acceptable to the Chief Underwriter", and this constituted prejudicial error because there is no Chief Underwriter on this construction job. It appeared in evidence that the term "Chief Underwriter" meant FHA, that FHA had no connection or interest in the contract before us so there was no Chief Underwriter.

Rogers & Son first objected to the admission of 406-D3.b and 406-G 2.a on the ground that the specifications in Plff's Exhibit 2 were controlling. The court indicated it would admit 406-D3.b. and 406-G2.a. as evidence in all matters except the phrase "acceptable to the Chief Underwriter." Rogers & Son objected to the exclusion of this phrase and stated: "if there are any minimum requirements in the publication, they must be either received in toto or excluded and, where these particular sections provide, if you will, a sliding standard predicated on the judgment of the Chief Underwriter, the whole purpose and meaning of such minimum requirements have been emasculated, in that there remains only a portion of the requirements, which would set up a standard not provided for by the written document, since the written document leaves a large area in which the Chief Underwriter may approve some particular type of construction." The court then stated: "The court is perfectly willing to leave that provision remain in the admitted exhibits, for whatever benefit the defendants might be entitled to from it. We have no intention of foreclosing from the defendants any right to show acceptable substitutions were contemplated in the contract, so we will modify our ruling to that extent." Rogers' counsel then said: "The defendants except to the most recent ruling of the court; namely, to admit those paragraphs in their printed form, by reason of the fact the paragraphs in the printed document set up a standard to be determined by the Chief Underwriter and there is no way of determining, at the present state of the case, what the Chief Underwriter's

standard would be, and to attempt to hold the defendants to an elastic standard dependent on someone's judgment, who is not here in court, we say our rights are greatly prejudiced and we would like exception to the ruling." The court allowed such exception. Rogers & Son cannot complain that the phrase "acceptable to the Chief Underwriter" was admitted into evidence because this was done at the insistence of their own counsel. 406-G2.a of the FHA Minimum property requirements were properly admitted in evidence and the exceptions to the admission of this evidence are not sustained.

In their declaration the Jacksons alleged: "The said defendants did not construct the said house in a good and workmanlike manner, in conformity with the specifications in said writing, nor in conformity with the usual building standards in this vicinity, in that the defendants, in building such house did not: 1. Provide a solid, continuous cap or plate along the easterly side of said house; 2. Provide a solid, continuous unnotched shoe along the easterly side of said house; 3. Provide proper vertical studding and horizontal nailing members in the building framing between the cap or plate and the gable rafters at the easterly end of said building; 4. Provide a poured concrete footing below the normal frost line for the foundation walls; 5. Provide a solid foundation wall free from transverse cracks; 6. Provide a proper backfill of gravel around the foundation wall; 7. Provide a waterproof basement; 8. Properly mortar the joints between the cement blocks which form the foundation walls; 9. Provide proper drainage fill around the tile drain at the edge of the foundation footings; 10. Provide a proper base for the entrance platform, or step, at the rear door of said building; 11. Install properly the flooring in the rooms of said house." Rogers & Son have briefed their exceptions to submitting to the jury the allegations numbered 1, 2, 3, 4, 6, 7 and 9 in the Jackson's declaration.

The court's charge to the jury included the following: "Where no standard is spelled out in a building contract such as this as to the standard of workmanship to be applied to the construction and assembling of the materials

by the builder, the Law implies a standard which is set forth as a 'good workmanlike manner' or 'good workmanlike construction' as that standard is established by the practices in this immediate vicinity. This means that that standard forms a term of this contract, as a matter of Law, and I so instruct you, just as if it were written in the document." "The defendant Rogers cannot be held for anything done wholly by National Homes which you may find to be a violation of the contract. He can only be held for what he or his men did or failed to do that was a breach of the contract, as you find it to be." No exception was taken to the charge to the jury. Therefore, it became the law of the trial. *Senna* v. *Gero,* 118 Vt 331, 335-336, 109 A2d 344, and cases there cited. On all the evidence viewed in the light most favorable to the Jacksons, the jury, acting fairly and reasonably, could have found justly that Rogers & Son failed to construct the house and assemble the materials in "a good workmanlike manner" or a "good workmanlike construction" as that standard was established by the practices in that immediate vicinity.

As to allegation numbered 1 Rogers' brief claims the trial court should have stricken it from consideration by the jury because the evidence conclusively showed the allegation had nothing to do with Rogers & Son; that while the court in its charge instructed the jury that anything done wholly by National Homes would not be charged against Rogers, the court still left for the jury's deliberations the matter of the alleged cutting of the cap or plate; that this was wholly the act of National Homes and not Rogers; and that submission of this allegation to the jury cannot but have been prejudicial error.

The evidence was undisputed that the top plate, i.e. the cap, along the easterly side of the house, has about a ten inch cut entirely through it; that the cut was made by National Homes for the vent pipe to go through. The undisputed evidence also showed that the applicable FHA Minimum Construction Requirements in paragraph 408-F.6 provided as follows: "Plates a. when plates are cut for piping or duct work, install steel angle tie for plate and bearing for joists." The undisputed evidence tended to show no steel angle tie

was installed; the Jacksons' evidence tended to show that where the plate was cut it had nothing to support it; that there was no tie completely across the house from the sill to the rafter; that any wind will cause it to wave and that caused damage to the house. The Jackson declaration did not allege the cutting of the cap or plate but the failure of Rogers & Son to "Provide a solid, continuous cap or plate along the easterly side of said house." Under the charge to the jury and the evidence there was no error in submitting this issue to the jury.

As to allegation numbered 2 all that Rogers' brief claims is that "it conclusively appears that the panel with the shoe or lower plate was installed in condition as supplied by National Homes. To submit any question having to do with the alleged notches or cuts in the lower plate—not being the act of Rogers —constituting prejudicial error. It should have been stricken." The undisputed evidence showed that the shoe or lower plate along the easterly side of the house was notched out by National Homes to allow the vent pipe to pass into the outside wall and that it was installed by Rogers & Son in the same condition as supplied by National Homes. There was no evidence that any steel angle tie was installed and the Jacksons' evidence tended to prove that the bottom plate was not completely continuous and solid along the easterly side of the house; that the top of the shoe was cut and that the cut in the shoe weakened the strength of that wall. The Jackson declaration did not allege the notching or cutting in the lower plate but the failure of Rogers & Son to "Provide a solid, continuous unnotched shoe along the easterly side of said house." Under the charge to the jury and the evidence there was no error in submitting this issue to the jury.

Under the allegation numbered 3 in the Jackson declaration their evidence tended to prove that the gable end of the house was made up of panels, having a stud frame with a plywood covering, that both a vertical stud and a horizontal nailing stud had been removed from the gable, that the gable buckled out, that you could see right through the gable end and the removal of the studs weakened the strength and

durability of the east gable. The submission of the issue made by allegation numbered 3 was without error.

Rogers & Son claim it was error to submit Jackson's allegation numbered 4 to the jury because there is no evidence in the case which justified it. They quote the testimony of their witness, Henry Lake, that the footing was down below the frost line on the east side of the house and well below frost on the other three sides; that a trench or ditch at least 4 feet deep was first dug around the entire basement and he then poured cement wall in the ditch. Rogers & Son claim this testimony was not denied. The FHA Minimum Construction Requirements received in evidence provide that the foundation excavation shall extend below the prevailing frost line, at least one foot below natural grade and below the finish grade not less than 4 feet. The Jackson evidence was that the east side of the foundation wall was about 14 inches, plus or minus an inch, below the grade and that it was above the frost line. Because the evidence was conflicting there was no error in submitting allegation numbered 4 to the jury.

Rogers & Son claim it was reversible error for the trial court to submit Jacksons' allegation numbered 6 to the jury because, they say, a search of the exhibits and record fails to disclose any reason either as to law or fact which would require Rogers to provide gravel backfill for the foundation wall; that to let the jury deliberate on allegation numbered 6 was merely to open the door to speculation and conjecture; that it was too conjectural and remote to be regarded as damages; and that the evidence from Jacksons' own expert would indicate that the earth backfill is proper.

■ The written contract and specifications make no mention of backfill. The FHA Minimum Construction Requirements received in evidence state: "Earth backfilling shall be placed carefully against foundation walls and shall be well tamped. Debris or frozen earth shall not be used for backfilling." Jacksons' expert did testify in cross examination that earth backfill is correct but he also testified in direct examination that in his opinion the backfill used was excavated material, which is not porous; that the wall was not properly

backfilled; that it froze and expanded and pushed the wall in; that it caused the wall to fracture; that the usual way of back filling is to put porous material on top of land tile, so it will take the rain and won't freeze, so it will be carried off. It was for the jury to decide which of his testimony to accept. *Sparrow* v. *Cimonetti*, 115 Vt 292, 298, 58 A2d 875, and cases there cited. It was also for the jury to decide, on all the evidence, whether the FHA requirements were complied with, so allegation numbered 6 was properly submitted.

Rogers & Son contend the contract itself is specific regarding what they were bound to do to provide a waterproof basement and because they did what the written contract provided they were to do the trial court erred in submitting that issue to the jury. The Jacksons agree that Rogers and Son are bound by the terms of their contract as regards the waterproofing of the foundation, that the contract is specific in one respect on this point and that the coat of Han-a-dex mentioned in the contract was applied. But the Jacksons claim that under the contract the coat of Han-a-dex should have been applied after a $\frac{1}{2}$ inch thick portland cement plaster coat had previously been applied to the foundation wall. What we have said *supra* in holding that paragraph 406-G2.a of the FHA Minimum Property Requirements was properly received in evidence covers the issue now under discussion. The evidence was undisputed that the basement was not waterproof and that no plaster coat of portland cement was applied to the foundation wall. This was repeatedly referred to in the evidence as a "parge coat." Allegation numbered 7 in the Jackson declaration was properly submitted to the jury and the exception is not sustained.

With regard to their exception to the submission of the allegation numbered 9 all that Rogers & Son say in their brief is that the testimony that a foot of $\frac{3}{4}$ inch stone was placed on the drainage tile was not refuted; thus, to submit this question to the jury constituted error. Study of the transcript reveals that evidence presented by the Jacksons showed that there were not 12 inches of cover over the drainage title, that the cover was of gravel and that it was not above the top but only to about the top of the tile. Paragraph

406-D3.b of the FHA Minimum Property Requirements provides that the drain tile be covered with one foot of gravel, so that issue was for the jury to determine and the exception is without merit.

After the verdicts were rendered and before the judgments were entered Rogers & Son filed a motion to set aside the verdicts. This motion was overruled and Rogers & Son were allowed an exception. They have briefed the following grounds: "a. The verdicts are not supported by the evidence; b. There is no evidence in the cases which warrants the verdicts as rendered; c. There is no evidence in the case which supports and justifies the verdict in the case of Jackson v. Rogers for the sum of $950; d. The verdicts as rendered are entirely inconsistent with the theories upon which the cases were tried." They treat the points together.

The only evidence as to damages in the case of Jackson v. Rogers & Son consisted of three items: cost to repair the foundation wall, including a parge coat, approximately $1000; cost of putting the floor in the condition specified in the contract, $400; cost of putting the gable end and the easterly wall of the house in the condition specified in the contract, $65. Rogers & Son claim this raises the question as to what is the correct rule of damages and that they believe it to be "market value." Rogers & Son claim the Jackson house was completed and if its market value was no less by reason of the alleged shortcomings of Rogers & Son then the Jacksons have suffered no damage. They also claim the record is silent as to any depreciated value of the Jackson house, by reason of any of the alleged defects, and thus it follows that there was no evidence in the case on which any award of damage could be found. The only evidence as to damages in the case of Rogers & Son v. Jacksons was that the balance of $500 on the price for the completed home had not been paid, which the Jacksons admitted but claimed that the house had not been completed.

In the Jackson case v. Rogers the court charged that, if entitled to damages at all, the plaintiffs were entitled to damages measured by the difference in worth or value of what they contracted for and what they got, as to each item

and that evidence of the cost of putting items into their contractual state was of some relevance in enabling the jury to measure the difference in value as the court had described it, and that the jury could find the damages only from the evidence, not from speculation or conjecture. The court further charged that Rogers & Son could not be held for anything done wholly by National Homes which the jury might find to be a violation of the contract but that Rogers & Son could only be held for what they or their men did or failed to do that was a breach of the contract, as the jury found it to be. The court also charged that, if entitled to damages, the Jacksons were entitled to interest at the rate of 6% on their damages from the time they took the house to the date of the verdict.

In the Rogers case v. the Jacksons the court charged that to be entitled to recover the unpaid balance of $500 balance on the contract price, which the Jacksons conceded had not been paid, Rogers & Son must show either that the contract was completed or that they had been excused from further performance because it had been prevented by the Jacksons or was excused under some term of the contract as the jury found it to be. In that connection the court instructed that the jury would want to consider, among other things, paragraph 6 of plaintiffs' exhibit 1, which was the Construction Agreement and the provisions of the schedule of payments on the reverse side of plaintiffs' exhibit 1. The court charged if the jury found Rogers & Son entitled to damages the amount would be $500 plus interest at 6% from the date of completion or prohibition or excuse to the date of the verdict.

No exceptions were taken at all to the charge relating to damages so it became the law of the trial. *Senna* v. *Gero*, 118 Vt 331, 335-336, 109 A2d 344, and cases there cited.

■ ■ Rogers & Son claim the only evidence as to the amount of the Jackson's claim totaled $1465 and, therefore, we must conclude that, if the Jacksons were entitled to any money verdict, they would be entitled to the amount the evidence showed, $1465. The total amount of the Jacksons' claim

as shown by the evidence was not $1465 but approximately that amount. The evidence was conflicting whether the Jacksons were entitled to recover each of the items they claimed as damages. Therefore, the amount to be awarded rested in the judgment of the jury. *Mullet* v. *Milkey*, 113 Vt 42, 45, 29 A2d 806, and cases there cited. The jury may well have disallowed the Jacksons' claims of $400 for the floor and $65 for the gable end and allowed $950 for the foundation wall which was approximately the amount shown by the evidence. If the verdict can be justified upon any reasonable view of the evidence, it must stand. To warrant interference where there is no standard of damages disclosed by a contract, or otherwise ascertainable by exact evidence of pecuniary loss, the amount must be clearly shown to have been grossly insufficient or excessive and the fact that the verdict has received the express approval of the trial court inclines us strongly in its favor. *Cenate* v. *Hunter*, 115 Vt 402, 404, 62 A2d 645, and cases there cited.

■ Moreover, Rogers & Son have failed to show that they were prejudiced by the fact that the verdict was $950 rather than $1,465, which they claim the verdict should have been if it was to be rendered for the Jacksons. The error if any, in this respect would not have been reversible error. *Bailey* v. *Central Vt. Ry. Inc.*, 113 Vt 433, 441, 35 A2d 365.

As we have stated *supra* in the case of Rogers & Son v. the Jacksons the evidence was conflicting whether the $500 was due and owing. The jury's verdict decided it was not and the evidence justified the verdict.

In their brief Rogers & Son say "we can deduce that the jury offset the $500 against the $1,465, but if that were to be assumed, it would constitute error because both parties would not be entitled to recover." There again, it would not be reversible error because Rogers & Son would not have been harmed. *Bailey* v. *Central Vt. Ry. Inc.*, *supra*.

We find no error in the denial of the motion to set aside the verdicts. *In each case the judgment is affirmed.*