## Vermont State Colleges Faculty Federation, AFT Local 3180, AFL-CIO, and Peter Rasmussen v. Vermont State Colleges

[561 A.2d 417]

No. 87-082

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed April 28, 1989

*Richard T. Cassidy* and *Julie A. Frame* of *Hoff, Wilson, Powell & Lang*, Burlington, for Plaintiffs-Appellants.

*Sutherland Associates, Inc.*, Burlington, for Defendant-Appellee.

**Gibson, J.** Grievants appeal from a decision of the Vermont Labor Relations Board (Board) denying their claim for payment of sabbatical funds to grievant Peter Rasmussen, a professor in the Electrical Engineering Department of Vermont Technical College. We affirm.

Mr. Rasmussen was at all relevant times a tenured faculty member at Vermont Technical College (College); grievant Vermont State Colleges Faculty Federation (Federation) is the designated bargaining representative for the College faculty. Under the collective bargaining agreement (agreement) in force between the Federation and the College at the time, the College was required to grant four paid sabbatical semesters to faculty members in each academic year, consisting of the fall and spring semesters.

Only three faculty members, all of them affiliated with the Electrical Engineering Department, applied for sabbaticals for

the 1985-86 academic year. Mr. Rasmussen, whose Feburary 1985 application requested a full-year sabbatical for 1985-86, was granted only a one-semester sabbatical for the fall of 1985, while his two colleagues in the Department received the other three sabbaticals required under the agreement. At Mr. Rasmussen's request, however, he was granted an unpaid leave of absence for the fall 1985 semester, and the sabbatical was rescheduled to the spring 1986 semester.

Because all four 1985-86 sabbatical leaves were granted to members of Mr. Rasmussen's department, the College realized in late 1985 that it faced a staffing problem for the spring 1986 semester. One of Mr. Rasmussen's colleagues — Peter Kawecki, who had been awarded a two-semester sabbatical for 1985-86 — then volunteered to defer the spring 1986 portion of his leave until the following fall in order to alleviate the problem. The College agreed to Mr. Kawecki's proposal.[1]

When Mr. Rasmussen learned of Mr. Kawecki's deferred sabatical two weeks before the fall 1985 semester ended, he approached the College president and requested that he receive the proceeds from Mr.Kawecki's "unused" 1985-86 sabbatical. His request was denied. Mr. Rasmussen and the Federation grieved this decision to the Board under Articles 3, 14, and 28 of the agreement, claiming that Mr. Rasmussen should be awarded the sabbatical funds. The Board found in favor of the College.

Grievants advance two grounds for reversal; (1) that the Board erred in construing Article 28 of the agreement; and (2) that the Board erred in finding that grievants had waived their claims under Articles 3 and 14 of the agreement

## I.

Article 28(A) of the agreement provides as follows:

> [F]or use in each year of the contract, each College shall grant a total of four semesters of sabbatical leave at 75% of salary plus full fringe benefits to tenured faculty. Tenured faculty may be awarded one- or two-semester sabbaticals.

---

[1] Although the College rescheluled one semester of Mr. Kawecki's full-year sabatical to fall 1986, it nevertheless awarded an additional four sabatical leaves for the 1986-87 accademic year in order to fulfill its obligations under the agreement.

Article 28(D) of the agreement requires that:

1. Sabbatical proposals must specify how the planned sabbatical activities fit into the faculty member's overall plan of professional development . . . .

2. As part of the process for applying for a sabbatical, the faculty member shall meet with the department chairperson to review the benefit of the plan to the department and shall meet with the Dean to review the benefit of the plan to the College.

Grievants argue that Article 28(A) must be read as mandating the actual use of four semesters of sabbatical leave each academic year. The Board found, instead, that Article 28(A) required only that four semesters be granted, so that the term "use" must be construed as "intended use," not "actual use." Grievants further contend that the Board's characterization of Mr. Rasmussen's request as "retroactive" was incorrect, and that in so deciding the Board had erroneously found a conflict between Articles 28(A) and (D) of the agreement.

In reviewing grievants' claims, the Board found there was no contract violation in the College's refusal to pay Mr. Rasmussen the "unused" sabbatical funds. Instead, it concluded that Article 28(D) clearly contemplated that any proposed sabbatical be planned in advance of the request, and that the parties to the agreement had accordingly not provided for the retroactive granting of sabbaticals. The Board further concluded that grievant Rasmussen's request for use of unused funds two weeks before the end of the semester constituted such a retroactive request.

Grievants claim that since Mr. Rasmussen had originally applied for a two-semester sabbatical, he had effectively satisfied any planning requirements imposed by Article 28(D). Thus, they contend, there was no conflict between Articles 28(A) and (D), and the Board need not have attempted to harmonize them in this particular case.

■ At the outset, we note that decisions made within the expertise of an administrative agency are presumed to be correct, valid and reasonable, *In re DeCato Brothers, Inc.*, 149 Vt. 493, 496, 546 A.2d 1354, 1356 (1988), and we will normally defer to its determinations. *In re Merrill*, 151 Vt. 270, 272, 559 A.2d 651, 653 (1988).

■ Traditional principles of contract law govern the construction of collective bargaining agreements. See, e.g., *In re Muzzy,* 141 Vt. 463, 474-76, 449 A.2d 970, 975-76 (1982); *Hackel* v. *Vermont State Colleges,* 140 Vt. 446, 452, 438 A.2d 1119, 1122 (1981). A fundamental maxim of contract law is that in construing an agreement effect should, if possible, be given to every material provision as part of an intergrated whole. *Vermont State Colleges Faculty Federation* v. *Vermont State Colleges,* 141 Vt. 138, 143, 446 A.2d 347, 349 (1982); *Cross-Abbott Co.* v. *Howard's, Inc.,* 124 Vt. 439, 441, 207 A.2d 134, 137 (1965).

■ The Board did not rely on any conflict between Articles 28(A) and (D) in reaching its conclusions. Instead, it properly looked to the entire collective bargaining agreement before construing Article 28(A). Article 28(D), which sets forth a planning process requiring sabbatical proposals and faculty/administration meetings, was read in conjunction with the agreement's requirement that four semesters of sabbatical leave be granted for use in each academic year. In concluding that these provisions contemplated only applications for prospective sabbaticals, not retroactive grants of unused sabbatical funds, the Board simply attempted to give full effect to each provision as part of the whole contract. See *In re Vermont State Employees' Ass'n,* 139 Vt. 63, 65, 421 A.2d 1311, 1312 (1980) (citing *Jackson* v. *Rogers,* 120 Vt. 138, 141, 134 A.2d 620, 622 (1957)). Grievants have made no clear and convincing showing that the Board's interpretation is erroneous and that the agreement mandates the result they urge. *In re Decato Brothers,* 149 Vt. at 496, 546 A.2d at 1356.

Since grievants have not overcome the presumption of validity accorded the Board's construction of the agreement, we will not disturb its determination on appeal.

## II.

■ Grievants next allege that the Board erred in concluding that their claims under Articles 3 and 14 of the agreement were waived.[2] In its decision, the Board stated:

[2] Article 14 of the agreement defines "grievance" to include "the discriminatory application of a rule or regulation," while Article 3 prohibits the arbitrary or capricious application of the rights and responsibilities reserved to the College under the agreement.

The grievance filed with the Board alleged violations of Article 3 and Article 14 of the Contract, in addition to Article 28. However, the Federation has presented no evidence or argument on those articles as they relate to the denial of Rasmussen's request, and thus, we deem the alleged violations of those articles waived.

Grievants point to testimony at the hearing as well as to the trial brief filed with the Board to support their contention that they did, in fact, present evidence as to Article 3 and Article 14 violations.

After reviewing the record, we agree with grievants that some evidence was presented in an attempt to prove that the College's decision to deny sabbatical funds to Mr. Ramussen was made arbitrarily and capriciously, or involved the discriminatory application of a rule or regulation. Thus, no waiver of those claims actually occurred. Our decision does not necessarily warrant reversing the Board, however.

In support of their claims under Articles 3 and 14, grievants presented evidence that other faculty members' sabbatical requests met with different results than Mr. Rasmussen's request. For example, they claimed that the College's agreement to defer one semester of Mr. Kawecki's sabbatical was "arbitrary and capricious."[3] They introduced evidence regarding a Mr. Rogers, another faculty member, who had been granted a sabbatical for the fall of 1986, and whose request for an additional semester's sabbatical for the spring 1987 semester was granted in November of 1986 when his original leave was almost over. In addition, grievants introduced evidence that when the request at issue was made by Mr. Rasmussen, the College's president refused to review the book Mr. Rasmussen had been working on while on leave that fall. These actions, grievants claim, were either "arbitrary and capricious" within the meaning of Article 3, or constituted the discriminatory application of a rule or regulation under Article 14 of the agreement.

---

[3] When discussing these facts in its trial brief, the Federation framed the issue as whether the College's decision to defer Mr. Kawecki's spring 1986 sabbatical violated the collective bargaining agreement. The College correctly points out that its actions with respect to Mr. Kawecki were never grieved and thus this particular issue was not properly before the Board.

■ While the Board incorrectly found that no evidence relating to violation of Articles 3 and 14 of the agreement was presented, we will affirm a judgment which is correct even if the grounds stated in its support are erroneous. *Bills* v. *Wardsboro School District,* 150 Vt. 541, 544, 554 A.2d 673, 675 (1988); *Circus Studios, Ltd.* v. *Tufo,* 145 Vt. 219, 222, 485 A.2d 1261, 1263 (1984).

The Board's findings refer to the incidents involving Mr. Kawecki and the College president, although not the evidence relating to Mr. Roger's sabbaticals. We do not find the latter oversight to be fatal, since, given our interpretation of the agreement, nothing therein would prevent the College from granting a prospective-only sabbatical request. Likewise, the decision to defer Mr. Kawecki's sabbatical in light of the College's staffing difficulties was not prohibited by the agreement and, since it affected neither the status quo nor the number of sabbaticals granted for the subsequent year, cannot be said to have been arbitrary or capricious. In addition, the president's decision not to review Mr. Rasmussen's work was not arbitrary since the semester was virtually over and this "planning activity" would have related to an unauthorized retroactive sabbatical.

The record does not support a conclusion that any of the actions complained of were arbitrary or capricious, or constituted the discriminatory application of a rule or regulation. Instead, the findings by the Board amply support a conclusion that there were no violations of Article 3 or Article 14 of the collective bargaining agreement.

*Affirmed.*