## In re Grievance of Robert L. Hood and Thomas O. Mahar, Jr.

[592 A.2d 907]

No. 88-271

Present: Allen, C.J., Peck, Gibson and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed May 3, 1991

*Michael R. Zimmerman*, VSEA Staff Attorney, Montpelier, for Plaintiffs-Appellees.

*Jeffrey L. Amestoy*, Attorney General, and *Michael Seibert*, Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Allen, C.J.** The State appeals from a decision of the Vermont Labor Relations Board restoring two state employees to their former pay grades and awarding them back pay for wages lost as a result of their "involuntary demotion." We reverse.

On January 14, 1987, Governor Madeleine Kunin, citing 3 V.S.A. §§ 209 and 2001,[1] signed an executive order that provided, in part, as follows:

> [I] do hereby transfer the following positions and incumbents from the Agency of Environmental Conservation, Department of Water Resources, to the Department of Labor & Industry, with position duties to be defined by the Department of Labor & Industry and the appropriate classification action to be taken by the Department of Personnel, both to be completed by the effective date of the transfer:
> WA 0130, Plumbing Review Chief
> WA 0139, Environmental Technician C

Grievant Robert Hood, Jr., a classified state employee since 1960, and grievant Thomas Mahar, Jr., a classified state employee since 1972, were the two "incumbents" affected by the

---

[1] 3 V.S.A. § 209 provides, in part, that the governor "may transfer, temporarily or permanently, subordinates of any one of [the] departments to another department as the needs of the state may seem to him to require."
3 V.S.A. § 2001 provides that "[t]he governor may make such changes in the organization of the executive branch or in the assignment of functions among its units as he considers necessary for efficient administration."

order. Pursuant to that order,[2] on April 16, 1987, the Commissioner of the Department of Labor and Industry sent to the Department of Personnel a description of the duties for the revised Plumbing Inspector class, a recommendation that the pay grade for the class be increased from pay grade 17 to pay grade 18, and a memorandum that included the following language:

> As you can see from the Executive Order this will result in an involuntary demotion for the two AEC employees. I understand that reduction in force procedures are not necessary to do and that the incumbents' salaries will not be reduced.

On April 22, 1987, the Director of Personnel Operations informed the Commissioner that the two positions named in the order had been reallocated to the class of Plumbing Inspector, which had been reassigned to pay grade 18. See 3 V.S.A. § 310(a) (Department of Personnel has duty to classify positions based on job descriptions). On May 1, 1987, the Commissioner informed grievants that because the reallocation of their former positions represented an "involuntary demotion" for them (Hood had been at pay grade 20 while Mahar had been at pay grade 19), their current salaries would not be reduced.[3]

Grievants reported for work at the Department of Labor and Industry on May 17, 1987. Although grievants retained their current salaries, they suffered adverse economic consequences as a result of the State's actions. Because Hood's salary was above the maximum for pay grade 18, he was precluded from later moving to a higher step within the pay scale. Similarly, Mahar would derive smaller salary increases from future stepups within the pay scale.

---

[2] The executive order was submitted to the general assembly in accordance with 3 V.S.A. § 2002. Neither house passed a disapproving resolution.

[3] Under the collective bargaining agreement between the State and the Vermont State Employees' Association, "demotion" is defined as "the change of an employee from one pay scale to another pay scale for which a lower maximum rate of pay is provided." Further, under § 6.074 of the Personnel Administration Rules, "[a] permanent status employee with three or more years of continuous State service whose position is reallocated downward through no fault of his own and whose service in the position is at least fully satisfactory shall not be subject to a reduction in salary."

In July of 1987, Hood and Mahar filed a grievance alleging that they were unlawfully demoted in violation of the collective bargaining agreement (Contract) between the State and the Vermont State Employees' Association. The Vermont Labor Relations Board ordered that the grievants be restored to their former pay grade, with back pay. The Board's ruling was based on its conclusion that the Contract and the personnel rules permitted an employee to be demoted only when there was a reduction in the work force,[4] which did not occur here. While conceding that the executive order had authorized "appropriate classification action," the Board reasoned that any such action cannot prejudice an employee beyond what is permitted by the Contract and personnel rules. According to the Board, while *positions* may be "reallocated" downward as a result of a classification review, *employees* are "transferred" or "demoted."

Despite the deferential standard accorded to Board determinations, see *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 151 Vt. 457, 460, 561 A.2d 417, 419–20 (1989), we reject the Board's conclusion that the State's actions in this matter violated the Contract and the personnel rules. The Board's reasoning was as follows: (1) The executive order "transferred" the grievants. (2) Personnel Rule 2.041 defines "transfer" as a change of an employee to a position within the same pay grade. (3) The Contract defines "demotion" as "the change of an employee from one pay scale to another pay scale for which a lower maximum rate of pay is provided." (4) Griev-

---

[4] The Board has since changed its position on this point. In *In re Hood*, 11 V.L.R.B. 64, 73–74 (1988), the Board noted that Personnel Rule 11.05 permitted demotion "for cause" or "because of reduction in force" but that a lawful demotion could only result from a reduction in work force because Article 17 of the Contract, relating to disciplinary actions, had removed demotion as one of the disciplinary steps available for "just cause." In a later case currently on appeal in this Court, *In re Ulrich*, 12 V.L.R.B. 230, 239–41 (1989), the Board held that although "disciplinary demotions are clearly prohibited" by Article 17, Rule 11.05 does not prohibit demotions "for cause" unrelated to disciplinary actions. According to the Board, "downward reallocations" are permitted because they are demotions "for cause" and yet are not the result of disciplinary actions. *Id.* at 240. The Board stated that its change of opinion on this point did not disturb its ruling in *Hood* "since the demotion of the grievants therein clearly was not for cause due to the requirement that their transfer must be to a position of the same pay grade." *Id.* at 241.

ants were moved to a pay scale with a lower maximum rate of pay; hence, they were "demoted." (5) Personnel Rule 11.05 allows the demotion of employees "for cause" or "because of reduction in force." (6) There was no reduction in work force and Article 17 of the Contract prohibits demotion as a disciplinary step. (7) Therefore, the State's actions constituted an unauthorized demotion.

We conclude that the Board's reasoning is flawed because both the Contract and the personnel rules authorized the State's actions here, which are more accurately characterized as implementing downward reallocations, not demotions.

■■ The construction of collective bargaining agreements is governed by traditional principles of contract law. *Vermont State Colleges*, 151 Vt. at 461, 561 A.2d at 420. "A fundamental maxim of contract law is that in construing an agreement effect should, if possible, be given to every material provision as part of an intergrated whole." *Id.*; see also *In re Stacey*, 138 Vt. 68, 72–73, 411 A.2d 1359, 1361–62 (1980) ("In construing written contracts to ascertain the parties' intent, Vermont courts seek to give effect to all material parts of the contract and to form a harmonious result.").

An examination of the instant Contract in its entirety, and a comparison of the contract provisions with the personnel rules, reveals the intention of the parties to recognize the State's authority not only to reallocate positions downward but also to change the pay scale of the incumbents currently holding those positions. Article 19 of the Contract, entitled "Classification Review and Classification Grievance," expressly retains the State's unilateral authority to reallocate positions, subject to challenge through a classification grievance, which may be brought by "employees" who are dissatisfied with their classification or assigned pay grade.[5] Further, Personnel Rule 6.074 makes it clear that a downward reallocation of an employee's position directly affects the financial status of the incumbent employee. Under Rule 6.0741, an employee with more than three years service whose position is "reallocated downward through no fault of his own" is not subject to a reduction in

---

[5] Grievants did not file a classification grievance in the instant matter.

*salary* (as opposed to a reduction in "pay grade" or "pay scale").[6] Rule 6.0742, which applies to downwardly reallocated employees with less than three years service, also preserves the employee's salary, unless it exceeds the maximum of the new pay scale.

■ The problem is that the State's actions in this case fit within the Contract definition for both "demotion" and "reallocation" ("the change of a position from one class to another class"). Although Rule 11.05 states that demotions are only allowed "for cause" or for "reduction in force," Rule 6.074 clearly contemplates that incumbent employees may be "demoted" (placed within a lower pay scale) as a result of the downward reallocation of the incumbents' positions. Because the Contract expressly gives the State the right to unilaterally reallocate positions, we must conclude that the State's actions here were authorized by the Contract and the personnel rules.

■ A lawful executive order transferred grievants and, at the same time, ordered a classification review of the transferred positions. Following a description and review of the duties involved, the positions were reallocated downward, and the incumbent employees retained their former salaries, albeit at a lower pay grade. Each one of these actions was authorized by statute, contract provision, or personnel rule. The Board's decision cannot stand.

*Reversed.*

---

[6] Grievants have not argued that the term "salary" in 6.0741 is the equivalent of the terms "pay grade" or "pay scale."