**UNITED STATES of America, Appellee,**

v.

**Alejandro MARTINEZ, also known as Alejandro Martinez–Garcia; Jose De Jesus Zapata–Herrera, also known as El Chino, also known as Jose Mario Perez; Nelson Aybar; Johnny Aybar; Felix Hernandez; Jose Miguel Rodriguez; Michael R. Williams; Margarita Hernandez; Francisco Bolivar; and Holguer Miguel Garay, also known as Luis Alicia Reina, Defendants,**

**Milagros Angeles; Rafael Polanco; Isabel Berrocal; And Guillermo Estevez, Appellants.**

**No. 1435, Docket 97–1449.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1998.

Decided July 28, 1998.

Cheryl A. Krause, Assistant United States Attorney for the Southern District of New York, New York City (Mary Jo White, United States Attorney, Craig A. Stewart, Assistant United States Attorney, of counsel), for Appellee.

Carmen M. Grullon, New York City, for Appellants.

Before: WINTER, Chief Judge, McLAUGHLIN and CALABRESI, Circuit Judges.

McLAUGHLIN, Senior Circuit Judge:

## BACKGROUND

In August 1992, Alejandro Martinez was arrested for conspiring to distribute cocaine. Almost immediately after his arrest, Martinez began cooperating with the government. On September 2, 1992, Martinez signed an agreement with the government in which he agreed to plead guilty to one count of conspiracy to distribute cocaine. He also agreed to assist in the prosecution of his co-conspirators and to testify against them.

For its part, the government agreed to forego charging Martinez with a number of other crimes and promised that if Martinez provided "substantial assistance" it would move for a downward sentencing departure pursuant to U.S.S.G. § 5K1.1. Finally, the agreement provided that Martinez's family would be entitled to government protection at his request.

On September 2, 1992, the same day that he signed the agreement with the government, Martinez was released on $250,000 bail. On behalf of Martinez, five persons posted a $250,000 appearance bond secured by $10,000 cash. The sureties on the bond were Milagros Angeles, Rafael Polanco, Isabel Berrocal, Guillermo Estevez and Francisca Nieves. Martinez's wife, Marisol, put up the $10,000 cash.

The bond provided that Martinez was required to "appear before [the district] court and at such other places as the defendant may be required to appear." The bond also specified that it was a "continuing bond (including any proceeding on appeal or review) which shall continue until such time as the undersigned are exonerated." The bond recited further that each surety would be "jointly and severally liable for the full amount of the bond in the event of any breach of bond conditions."

Before the sureties signed the bond, the government subjected them to a comprehensive interview. First, the government addressed the sureties as a group. Although Estevez and Berrocal were not proficient in English, the other three sureties were fluent in English and were able to explain the information presented by the government. In addition, Martinez's lawyer, who is bilingual, was available to translate.

During the group interview, the government cautioned all the sureties that Martinez was facing serious charges and a long jail term. The government explained that it possessed strong evidence against Martinez and that he had a strong incentive to flee. Indeed, the government actually urged the sureties to assume that Martinez was guilty in assessing their willingness to sign the bond. The government explained that by signing the bond, each surety was personally guaranteeing that Martinez would make all required appearances and would not violate his bail conditions. The government specifically warned the sureties that if Martinez violated any of his bail conditions, it would seek full recovery of the bond from the sureties, regardless of their ability to pay. Finally, the government urged the sureties to ignore anything that Martinez's family and lawyers told them about his innocence.

The government *did not* tell the sureties that Martinez had agreed to plead guilty; nor did it tell them that he was cooperating with the government.

The government then interviewed the sureties individually to assess their financial qualifications and their ability to exercise moral suasion over Martinez, should he decide to flee. In addition, the government again sought to ensure that each surety understood the information earlier imparted during the group interview. After interviewing each surety individually, the government found all five sureties qualified, and all five sureties signed the bond.

On September 16, 1992, pursuant to his agreement with the government, Martinez pled guilty in the United States District Court for the Southern District of New York (Griesa, *C.J.*), to one count of conspiracy to distribute cocaine. The government did not inform the sureties of this guilty plea. On October 26, 1993, Martinez pled guilty to a new charge of making false statements to a government agent. This second charge arose out of false statements made by Martinez during his debriefing session. The government also did not inform the sureties of this second plea.

Martinez was scheduled to testify against his co-conspirators on November 1, 1993. However, he did not show up at the trial. The government soon learned that Martinez had fled to the Dominican Republic, purportedly because his co-conspirators had threatened members of his family living there. On December 2, 1993, Martinez was indicted for bail jumping. He has never returned to the United States.

On June 16, 1994, the government moved for a default judgment ordering forfeiture of

Martinez's appearance bond. Notice was served on all the sureties and their counsel, but no objection was made to the forfeiture. On August 10, 1994, Judge Griesa granted the default judgment and ordered the bond forfeited.

About seventeen months later, the sureties moved to vacate the default judgment, arguing that: (1) they did not receive notice of a forfeiture hearing; (2) the government wrongfully concealed Martinez's agreement to plead guilty and to cooperate with the government; and (3) they were entitled to an evidentiary hearing before forfeiture was ordered. Judge Griesa denied the sureties' motion on July 3, 1997, holding that the failure to disclose the plea agreement did not invalidate the bail bond. In addition, Judge Griesa found that the interests of justice did not require vacatur of the forfeiture order.

The sureties now appeal, solely on the grounds that: (1) their obligations under the bond were excused because the government concealed Martinez's guilty plea and his plea agreement; and (2) Judge Griesa should have granted an evidentiary hearing on their claims.

## DISCUSSION

■ We review Judge Griesa's denial of the motion to vacate the default judgment under an abuse of discretion standard. *See Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir.1994).

The sureties argue that the government's failure to inform them of Martinez's plea agreement and subsequent guilty plea relieved them of all obligations under the bond. The sureties present three theories to support this claim: (1) the failure to inform the sureties was a material modification of the bail conditions; (2) the failure to inform constituted fraudulent concealment; and (3) the bail bond was unconscionable.

It is important to note that the sureties do not now claim that the government had a duty to inform them that Martinez agreed to cooperate with the government; they make it clear that their claims are based *only* upon the government's failure to disclose Martinez's agreement to plead guilty and his

subsequent guilty plea. Thus, the feature of Martinez's agreement that required him to cooperate is not at issue on this appeal.

*Material Modification*

The sureties believe that the government had a duty to inform them of *any* modification of Martinez's bail conditions, and, consequently, that the government's failure to do so relieved them of their obligations under the bond. They regard Martinez's agreement to plead guilty and the resulting guilty plea as modifications of the bail conditions that the government was obligated to disclose.

■ It is, of course, rudimentary that under certain circumstances the government's failure to notify a surety of a modification in bail conditions will discharge the surety's obligation under a bail bond. However, "[a] surety is not relieved of its obligation on a bond by a modification of bail conditions unless the government has materially increased the surety's risk without notice to and consent of the surety." *United States v. Gambino*, 17 F.3d 572, 574 (2d Cir.1994). The sureties seek to invoke the "material increase" exception. Martinez's plea agreement, however, was signed *before* the bail bond was issued, and was never modified thereafter. Thus, the agreement did not *modify* the terms of the bond. Properly analyzed, the sureties' argument concerning the plea agreement is actually a fraudulent concealment claim; we discuss this claim in detail below.

■ The guilty plea itself did take place after the bail bond was signed, and arguably could constitute a material modification of the bail conditions. However, the failure to disclose the guilty plea did not affect the sureties' obligations here because Martinez's guilty plea did not materially increase the sureties' risk.

The sureties signed a continuing bond that guaranteed the defendant's appearance even after his conviction. *See United States v. Catino*, 562 F.2d 1, 3 (2d Cir.1977). A defendant's guilty plea does not constitute a material modification of the terms of a continuing bond because by signing such a bond, a surety assumes whatever increased risk of

flight results from the defendant's conviction, whether at trial or after a guilty plea. *See United States v. Noriega–Sarabia,* 116 F.3d 417, 421 (9th Cir.1997); *United States v. Casey,* 671 F.2d 975, 977 (6th Cir.1982); *see also Catino,* 562 F.2d at 3–4. Since Martinez's guilty plea did not materially increase the risk to the sureties, the government's failure to disclose it did not relieve the sureties of their obligations under the bond. *See Gambino,* 17 F.3d at 574.

*Fraudulent Concealment*

The sureties also posit that their obligations under the bond are excused because the government fraudulently induced them to become sureties by concealing Martinez's agreement to plead guilty.

██ A bail bond is interpreted "within the general framework of suretyship and contract law." *United States v. Martinez,* 613 F.2d 473, 476 (3d Cir.1980). We apply federal common law in assessing a surety's obligations under a federal bail bond. *See Catino,* 562 F.2d at 2.

██ "[S]ureties must usually take the initiative and inquire about information they deem important." *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 235 (2d Cir.1995). However, under certain circumstances, an obligee's failure to disclose information constitutes fraudulent concealment and is a ground for voiding a suretyship contract. *See id.*

██ Traditionally, the failure to disclose information to a surety constitutes fraudulent concealment when: (1) the information materially increases the surety's risk compared to the risk that the obligee has reason to believe the surety intends to assume; (2) the obligee knows that the surety does not know the information; and (3) the obligee has an opportunity to communicate the information to the surety. *See* Restatement (Third) of Suretyship and Guaranty § 12(3) (1995) ("Restatement (Third)"); *see also Rachman,* 46 F.3d at 235.[1]

██ The Restatement (Third) provides that the traditional elements of fraudulent concealment are not, in themselves, grounds for voiding a suretyship contract. Section 12(3) of the Restatement (Third) explains that if a surety demonstrates the three traditional elements of fraudulent concealment, the obligee's actions constitute only a *material misrepresentation,* which is not an independent ground for voiding the contract. Under Section 12(1) of the Restatement (Third), a surety's obligations are voidable only if it was *justified in relying* on the material misrepresentation. Thus, under the Restatement (Third), a surety's obligations are voidable for fraudulent concealment only if the surety was reasonably justified in relying on the non-existence of the information that the obligee failed to disclose. *See* Restatement (Third) § § 12(3),(1).

The second and third elements of the Restatement (Third)'s fraudulent concealment test are obviously present in this case: the government knew that the sureties were ignorant of Martinez's plea agreement, and the government had an opportunity to inform them of the agreement when it gave them the other information about the bond.

The sureties argue that the first element of fraudulent concealment, the materiality of the undisclosed information, is also satisfied. Each surety filed an affidavit stating that he or she would not have signed the bond had they known that Martinez had already agreed to plead guilty. And Judge Griesa appeared to accept the sureties' claims when he stated that "[t]he sureties signed the bond because they believed that Martinez was not guilty and that he should be released on bail."

██ The materiality inquiry, however, should not focus simply on what the *surety* considered material when he signed the contract. Rather, the inquiry is whether the undisclosed fact materially increased the risk that the *obligee* had reason to believe the

---

**1.** The parties briefed and argued a point of New York law as to whether an obligee's failure to disclose crucial information, in the absence of an independent duty to disclose the information, amounts to fraudulent concealment. *See Rach-* *man,* 46 F.3d at 235–36. As tempting as it might be to address this *quodlibet,* we see no need to do so since, as we explain below, the sureties fail to satisfy the federal common law standard for fraudulent concealment.

surety would be unwilling to undertake. In short, the standard focuses on the obligee's reasonable perception of the risk the surety is willing to undertake. *See* Restatement (Third) § 12(3) cmt.

■ In this case, the fact that Martinez had agreed to plead guilty did not materially increase the risk to the sureties beyond the risk that the government had reason to believe the sureties were willing to undertake. The government told the sureties to assume that Martinez was guilty when they were deciding whether to assume the obligations under the bail bond. Nobody objected to proceeding on such an assumption, and none of the sureties expressed a belief that Martinez was indeed innocent. The sureties' willingness to sign the bond after being told to assume that Martinez was guilty gave the government reason to believe that the sureties were willing to assume the risk that Martinez was indeed guilty.

■ The sureties' fraudulent concealment claim also fails because their reliance on the government's alleged misrepresentation was not justified. *See* Restatement (Third) § 12(1). The sureties state that they signed the bail bond only because they assumed that Martinez was innocent. Their assumption, however, was manifestly unreasonable in light of the government's express instruction to assume that Martinez was guilty.

### Unconscionability

The sureties also claim that the bail bond was unconscionable, and that we should therefore refuse to enforce the forfeiture provisions of the bond. We are not persuaded.

■ For one thing, the sureties did not raise unconscionability below, and thus, have waived this argument. *See Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 103 (2d Cir.1998). In any event, the sureties have failed to show that the bail bond was unconscionable.

■ The doctrine of unconscionability seeks to prevent sophisticated parties with "grossly unequal bargaining power" from taking advantage of less sophisticated par-

ties. *United States v. Bedford Assocs.*, 657 F.2d 1300, 1314 (2d Cir.1981). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965); *see Bedford Assocs.*, 657 F.2d at 1312-13.

■ The sureties' argument lacks merit because the terms of the bail bond were not unreasonably favorable to the government. Although the bond called for forfeiture if Martinez failed to appear, the forfeiture term was reasonable in light of the bond's purpose. Without a provision requiring forfeiture, a bail bond would provide little disincentive for a defendant to flee and little incentive for the sureties to prevent the defendant from taking flight.

### Evidentiary Hearing

The sureties argue that Judge Griesa should have held an evidentiary hearing on all their claims before denying their motion to remit the forfeited bail. The sureties are incorrect.

■ We have not yet ruled on the standard of review applicable when a district court refuses to hold an evidentiary hearing on a surety's motion to remit bail. However, every Circuit that has considered the question has determined that such a decision is reviewed under an abuse of discretion standard. *See, e.g., United States v. Santiago*, 826 F.2d 499, 505 (7th Cir.1987). We agree.

■ The sureties requested an evidentiary hearing so they could prove their ignorance of Martinez's agreement with the government. However, no hearing was required because Judge Griesa accepted the sureties' claimed ignorance of the agreement. Judge Griesa also credited their assertion that they would not have signed the plea agreement had they known that Martinez was guilty. A hearing would have served no purpose. Judge Griesa therefore did not abuse his discretion by declining to hold such a hearing.

## CONCLUSION

Judge Griesa properly denied the sureties motion to vacate the default judgment of forfeiture. Accordingly, the judgment of the district court is hereby AFFIRMED.