### State of Vermont v. Jesse Chatfield
### (Marble Valley Bail Bonds, Appellant)

[787 A.2d 1247]

No. 00-580

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 9, 2001

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Cindy Ellen Hill* and *Jonathan C. Heppell, Law Office of Cindy Ellen Hill*, Middlebury, for Appellant.

**Johnson, J.** Surety Marble Valley Bail Bonds, Ltd. appeals from an order of the district court forfeiting bail following defendant's nonappearance for a jury draw. On appeal, surety argues that changes in the bail conditions and the addition of a new charge materially altered the risk surety assumed under the bail bond, without notice to surety, thus discharging surety's obligation. We affirm.

As there was no written decision in this case, the relevant facts, as can be gathered from the docketing statement, are as follows. In December 1998, defendant Jesse Chatfield was charged with grossly negligent operation of a vehicle, death resulting, in violation of 23 V.S.A. § 1091(b). In February 1999, surety posted $10,000 bail. Defendant's release was conditioned upon his reporting to the Vermont State Police barracks in St. Johnsbury, in person, every afternoon, and his not traveling outside of Essex, Caledonia, or Orleans counties without written permission of the court. In subsequent months, upon defendant's petition, the court modified the conditions of release to allow him to report to the state police by telephone and to travel to Washington County to work, to Chittenden County upon 24 hours notice to his attorney, and to Lamoille County for work. In May 1999, the State charged defendant with driving under the influence of drugs, death resulting, in violation of 23 V.S.A. § 1201(a)(3), as a result of the same incident giving rise to the first charge. After defendant did not appear for a jury draw in October 1999, the district court ordered the forfeiture of bail, and surety entered this appeal.

■ At issue in this case is the nature of bail bond agreement between surety, defendant and the court. A bail bond is a surety agreement governed by the same legal principles applicable to the construction and consequences of surety agreements in general. See generally *In re Palmer*, 171 Vt. 464, 769 A.2d 623 (2000). Here defendant and surety executed an appearance bond with the State in which defendant agreed to appear at all court proceedings for which he receives notice, and surety agreed to pay the State the amount of bail should defendant fail to appear. Particularly, surety agreed "to know when and where the defendant is to appear." The bond also makes clear that if surety "should ever become concerned about the above responsibilities, the defendant may be surrendered to the Court and bail returned according to Title 13 V.S.A. § 7526." Surety and defendant also executed a demand notice that secures surety's right to the bail amount in the event that it is forfeited to the court. In that notice, surety requires defendant to call surety once a week. These documents encompass the entirety of the agreement. Nowhere does the court accept any responsibility toward surety.

Surety's first argument on appeal is that the changes in defendant's conditions of release materially altered surety's risk without notice to surety. Surety relies on the principle that a material alteration to the original contract (the appearance bond) without notice to surety discharges the surety. Without addressing the validity of that assertion, however, we reject the premise of surety's argument because we find that the changes made to defendant's conditions were not material. Furthermore, even if the changes were substantial enough to alter surety's risk, we also hold that surety had notice of the changes because the changes were implemented at defendant's request.

The changes allowed defendant to travel more widely through the state and to report to the state police by telephone rather than in person. Similar changes were at issue in *United States v. Egan*, 394 F.2d 262 (2d Cir. 1968). In that case a condition that the defendant report to a marshal once a day was modified to once every ten days. When bail was forfeited because the defendant absconded, the surety argued that it was exonerated because of the change in the reporting condition. The court held the provisions of the bond contemplated that the court may order changes in the conditions of the defendant's release. *Id.* at 266. The bond stated that the defendant was to appear "in accordance with any and all orders and directions relating . . .

given or issued by" the court. *Id.* Because the change in conditions fell within this language, the surety knew that "such orders might be made." *Id.* In *Stuyvesant Insurance Co. v. United States,* 410 F.2d 524, 526 (8th Cir. 1969), the court held that a similar bond provision "expressly reserved to the Court power to enlarge the area in which the principal of the bond may travel. [Surety] . . . accepted the onerous conditions of assuring a criminal defendant's appearance for trial and should anticipate the enlargement of travel restrictions . . . ."

In this case, the appearance bond specifically states that defendant has "been given a copy of the conditions of [his] release and agree[s] to obey all the conditions listed." Thus surety was aware that defendant was released subject to conditions and so it should have contemplated that these conditions could be altered. Indeed, condition of release #5 states that defendant was not to travel outside of Essex, Caledonia, or Orleans counties "without written permission from this Court." The enlargement of defendant's travel area to other counties is nothing more than the court granting permission as contemplated by the conditions of release. See *People v. Rincon,* 603 P.2d 953, 955 (Colo. Ct. App. 1979) (holding that bond was not materially altered when court granted permission for the defendant to travel outside of the state).

As in *Egan,* a change in the reporting method from in-person to telephone was a change that should have been contemplated by surety, as it was surety's "responsibility to know when and where the defendant is to appear" as stated in the appearance bond. On its own, surety required defendant to call in only once a week as part of the demand notice. If surety believed that more stringent measures were needed to ensure defendant's appearance then it was entitled to restrict defendant appropriately. Moreover, surety could have surrendered defendant to the court if it felt insecure at any time. Obviously, surety was satisfied that defendant's calling in once a week was all that was needed to ensure his appearance. Thus, it is difficult to see how the court's modification from reporting in-person to calling in *daily* is a material change in the conditions of release.

█ Surety's argument that it was entitled to notice of the changes in the conditions of release is equally without merit. Nothing in the appearance bond obligates the court to inform surety of defendant's required appearances or of any change in his release conditions. As the court in *Stuyvesant* stated:

> The surety does not have to be notified every time the principal is to appear in court but instead should keep itself posted on when the principal is to appear in order to keep itself informed of any changes made by the court in accordance with the terms and purpose of the bond.

410 F.2d at 526-27. Nor was this a case in which the court modified the conditions of release on its own motion so that surety could not have known about the proceeding. Here, the docketing statement indicates that defendant filed motions seeking the modifications. "If it is the defendant in custody of the surety who moves for a modification of the bail terms . . . the surety must look to the defendant for notice of the motion or discover it itself from checking the court docket." *Egan*, 394 F.2d at 267. Therefore, because it was defendant who requested the changes, surety had constructive notice of the alterations to the conditions of release, and if it objected to these changes, it should have taken action to protect its interests accordingly.

Surety's second claim on appeal is that addition of the new charge also materially altered surety's risk and should discharge its obligation. Surety argues that the new charge, driving under the influence of drugs with death resulting, is a more serious felony that presented defendant with a greater incentive to flee. Cases that have confronted this issue have concluded that a new charge does not relieve the surety from its original obligation, which is to ensure defendant's appearance for the original charge bonded. In *State v. Vaughn*, 11 P.3d 211 (Okla. 2000), the defendant was originally charged with three felonies arising from a shooting. After bail was set and the defendant was released, the State filed four additional felony charges relating to the same transaction, without consent of the surety. The court explained:

> A bondsman assumes the risk of the prosecutorial strategy choices that would lead to increasing the number of charges for the same act or occurrence that is the subject of the initial appearance bond. Accordingly, when the State adds more charges in the same class as the original charges, the change is not a material one but is, instead, a change that falls within the ambit of the risk assumed by the bondsman from the beginning.

*Id.* at 215. Because the new charges were in the same class (all felonies) and originated from the same transaction, the court held the

surety's obligation was not discharged. *Id.* Similarly, in *State v. Indemnity Insurance Co. of North America,* 672 P.2d 251 (Kan. Ct. App. 1983), the defendant was originally charged with aggravated assault, released on bail and later charged with rape, kidnapping, and unlawful restraint. Even with the addition of three serious new felonies, the court concluded that "[t]he fact that the State proposed to try [defendant] for additional crimes . . . did not alter the surety's obligation to produce him on the original charge." *Id.* at 253; see also *People v. Soto-Gallegos,* 953 P.2d 946, 947-48 (Colo. Ct. App. 1997) (holding that addition of charge for crime committed while the defendant was released on bail did not discharge surety's obligation to produce the defendant on original charge); *State v. Pashall,* 174 A. 175, 176-77 (Conn. 1934) (same). We note that obligating a surety to produce the defendant on a bond when the defendant faces additional charges not bonded is hardly a novel construction of the surety agreement. See generally *Hartley v. Colquitt,* 72 Ga. 351 (1884); *Foster v. State,* 43 S.W. 80 (Tex. Crim. App. 1897).

For our purposes, therefore, we must assess to what degree the agreement between surety and defendant has been altered by the addition of the new charges. In *People v. Nishikawa,* 32 P.3d 630 (Colo. Ct. App. 2001), the court acknowledged that the addition of a new charge does expand surety's obligation beyond that explicitly assumed in the bond. The issue, however, is whether the new charge *"materially increased* the surety's risk of non-appearance by defendant." *Id.* at 631 (emphasis added). The court found that the risk was not materially increased where an additional charge did not add the threat of either mandatory prison time, where previously there was none, or a substantial increase in the length of a mandatory minimum sentence. *Id.* at 632. Cf. *American Bankers Ins. Co. v. Monroe County,* 644 So. 2d 560, 561 (Fla. Dist. Ct. App. 1994) (addition of conspiracy, a second degree felony, to a charge of drug trafficking, a first degree felony, substantially increased the penalty the defendant could face and thus materially increased the surety's risk, discharging the bond).

■ Here, the appearance bond was not formally extended to serve as a bond for the new charge. Thus, surety's risk on the bond remained the same whether or not the new charge was added — surety was to produce defendant on the charge of grossly negligent operation of a motor vehicle. There is nothing that distinguishes this case from those discussed above. Nor can it be argued that the new

charge materially altered the risk to surety. The new crime carries the same penalty as the original charge. Both 23 V.S.A. § 1091(b) and § 1201(a)(3) carry a penalty of not more than fifteen years imprisonment when death or serious injury results. See *id.* §§ 1091(b)(3), 1210(e). Thus, this is not a case where the penalty on the second crime charged creates a potential for a life sentence or similarly severe elevation in the potential punishment. Cf. *People v. Jones*, 873 P.2d 36, 37 (Colo. Ct. App. 1994) (addition of habitual criminal charges, which carry mandatory life sentence, sufficient to increase materially the risk to surety). Furthermore, both crimes charged involved a death, so there is little to surety's argument that defendant's mind-set was likely changed by the addition of the new charge. We therefore hold that the addition of the new charge was well within the risk assumed by surety when it executed the appearance bond. The court was within its discretion to order bail forfeited.

*Affirmed.*