**STATE of Vermont v. Dmitri SPITSYN (Marble Valley Bail Bonds, Appellant)**

[811 A.2d 201]

No. 01-143

October 3, 2002. Surety Marble Valley Bail Bonds, Ltd. appeals from an order of the Rutland District Court forfeiting bail following defendant's nonappearance for a status conference preceding his sentencing hearing. We affirm.

The relevant facts are taken from the docketing statement and are not in dispute. On August 17, 2000, Dmitri Spitsyn was arraigned in Rutland District Court on one count of negligent operation of a vehicle, in violation of 23 V.S.A. § 1091(b). The court imposed conditions of release, and surety posted $3,000 bail. On October 31, 2000, the parties informed the court that defendant intended to enter into a plea agreement with the State, and the court set the plea hearing for November 8, 2000.

At the plea hearing, defendant pled guilty pursuant to a plea agreement to negligent operation of a vehicle, in violation of 23 V.S.A. § 1091(a), and the trial court entered judgment. A sentencing hearing was set for February 14, 2001 and, at a status conference on that day, defendant failed to appear and the State filed a motion for forfeiture of bail. On February 16, a warrant was issued for defendant's arrest. On February 27, the trial court heard the State's motion for forfeiture of bail and ordered that bail be forfeited.

On appeal surety argues that: (1) the language of the bond obligates it to secure defendant's appearance only "pending trial"; and (2) its obligation was discharged because the trial court entered judgment without notice to the surety and without reviewing defendant's conditions of release, as required by V.R.Cr.P. 46(c).

Surety's first argument is that the plain language of the bail agreement obligated surety to secure defendant's appearance only "pending trial" and therefore, at the time judgment was entered, surety's obligation was discharged.* A bail agreement is no differ-

_____

* Surety also cites *Accredited Surety & Casualty Co. v. Putnam County*, 561 So. 2d 1243, 1244 (Fla. Dist. Ct. App. 1990), for the proposition that surety agreements expire at the time of adjudication of guilt, and do not extend to sentencing. As surety later notes, a surety is bound

ent from any surety agreement, *State v. Chatfield*, 173 Vt. 104, 106, 787 A.2d 1247, 1249 (2001), and as a contract between the State, a defendant, and the surety it is governed by the same rules of construction and legal consequences of any surety contract. *United States v. Martinez*, 151 F.3d 68, 73 (2d Cir. 1998) ("A bail bond is interpreted within the general framework of suretyship and contract law.") (internal quotations omitted).

The bail agreement signed by defendant and surety reads in pertinent part:

> I/we the undersigned do hereby voluntarily agree to act as surety for the above named defendant, in order to secure his/her release pending trial. I/we understand that the purpose of this appearance bond is to insure the attendance of the defendant at all court ordered proceedings, and that, as surety it is my/our responsibility to know when and where the defendant is to appear.
>
> In addition, we agree to the following:

---

by the language of the bond and statutes governing bail agreements, *People v. Hampton*, 662 P.2d 498, 500 (Colo. Ct. App. 1983), both of which vary in different jurisdictions. Compare *Accredited Surety & Casualty Co.*, 561 So. 2d at 1244 (surety is obligated only until the adjudication of guilt and not until sentencing where a Florida statute, Fla. Stat. 903.31, states that adjudication of guilt or innocence satisfies the obligation under the bond), with *United States v. Miller*, 539 F.2d 445, 449 (5th Cir. 1976) (there is no per se rule in federal jurisdictions that surety's obligation ends at the sentencing hearing), and *United States v. Martinez*, 151 F.3d 68, 73 (2d Cir. 1998) (interpreting limit of surety's obligation under the bond by the terms of the bond).

> 1. If the defendant fails to appear at a scheduled court proceeding I/we will be liable to the State of Vermont. . . .
>
> I/we understand that if the defendant obeys all the conditions of his/her release and appears before the Court when ordered to do so, then this appearance bond will be void and any deposit returned. I also understand that any deposit will not be returned until this case is closed and the defendant surrenders himself/herself to serve any sentence that may be imposed or until further order of the Court.

Surety argues that the plain language of the bail agreement requires the surety to guarantee defendant's attendance only until the adjudication of guilt, or when defendant enters a plea, and does not extend until defendant is sentenced.

In construing the surety agreement, the Court must give effect to each material term so, where possible, the contract reads as a harmonious whole. *In re Hood*, 156 Vt. 412, 416, 592 A.2d 907, 909 (1991). There are three separate provisions in this surety agreement that describe the extent of surety's obligation to secure defendant's appearance. The first, contained in the preliminary clause of the agreement, defines surety as the party securing defendant's release "pending trial." This is followed with a term stating, "[i]n addition, we agree to the following . . . if the defendant fails to appear at a scheduled court proceeding I/we will be liable to the State of Vermont," and a closing paragraph which reads, "I also understand that any deposit will not be returned until this case is closed and the defendant surrenders himself/herself to serve any sentence that may be imposed or until further order of the court." These provisions, read together as a harmonious whole, *Hood*, 156 Vt. at 416, 592 A.2d

at 909, communicate that surety is responsible for ensuring that defendant will appear at each court appearance, until defendant surrenders himself at the time of sentencing, or until the court orders otherwise.

Surety maintains that if the Court does not find that the bail agreement clearly releases surety's obligation at the adjudication of guilt, that at the very least, the Court should find it to be ambiguous and resolve that ambiguity against the drafter — the State. Surety is correct to point out that where a contract is ambiguous, it will be construed against the party who drafted it. *State v. Murray*, 159 Vt. 198, 205, 617 A.2d 135, 139 (1992).

A contract's construction is a matter of law where the contract is unambiguous, and whether it is ambiguous is also a question of law. *Morrisseau v. Fayette*, 164 Vt. 358, 366, 670 A.2d 820, 826 (1995). We have previously observed that "[t]here are no easy guidelines for determining when a clause or phrase of a contract is ambiguous." *Webb v. United States Fid. & Guar. Co.*, 158 Vt. 137, 139, 605 A.2d 1344, 1346 (1992). Where the writing, in and of itself, supports a different reading than that given in light of the circumstances, and both readings are reasonable, the contract is ambiguous. *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988). While surety argues that the preliminary clause contradicts the later provisions regarding the limits of surety's liability, it is axiomatic that the general, preliminary clause of a contract does not ordinarily control the later, more specific provisions of the contract. *Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc.*, 163 Vt. 433, 439, 658 A.2d 31, 35 (1995). The general introductory clause is followed by additional terms which make the surety liable to the State in the amount of the bond "if the defendant fails to appear at a scheduled court proceeding." The contract provides that the surety's liability of defendant's failure to appear at a scheduled court proceeding is *"in addition"* (emphasis added) to whatever obligations arise from the statement in the preliminary clause. See *Jackson v. Rogers*, 120 Vt. 138, 140, 134 A.2d 620, 622 (1957) ("where both the general and the specific provisions may be given reasonable effect, both are to be retained").

Moreover, it is appropriate, when inquiring into the existence of ambiguity, for a court to consider the circumstances surrounding the making of the agreement. *Isbrandtsen*, 150 Vt. at 579, 556 A.2d at 84. Although the surety undertakes only those duties described within the surety portion of the appearance bond, other language of the one page appearance bond is appropriately considered when inquiring into the existence of ambiguity. There can be no doubt that the appearance bond is intended to ensure that a defendant and surety understand the obligation to "appear at all court proceedings scheduled in the case." The appearance bond contains no less than five specific references to a defendant's obligation to appear, none of which are limited by "pending trial" language. See *District Court of Vermont Appearance Bond*, Dist. Ct. Form No. 345 ("I agree to appear at all court proceedings scheduled in this case for which I or my attorney receive notice. I understand that if I fail to appear or violate any other conditions of my release the court may issue a warrant for my arrest. I also understand that failure to appear at a scheduled court proceeding or as otherwise required by the conditions of my release can result in imprisonment . . . . I understand and agree that if I do not appear at a scheduled court proceeding for which I or my attorney have received notice, I must pay to the State of Vermont the sum of $[3,000], which is the amount of the bond. . . . I understand that if I obey all the conditions of my release and appear before this court, when I am ordered to do so, then this appearance bond will be void . . . .").

Under these circumstances, we cannot accept surety's assertion that the language of the bond making surety liable for defendant's failure to appear at a scheduled court proceeding may be reasonably read as *not* making surety liable when defendant fails to appear.

Next, surety asserts that the court's acceptance of defendant's plea releases the surety of obligation, because the surety did not have notice of the plea hearing, and the court accepted defendant's plea without reviewing defendant's conditions of release as required by V.R.Cr.P. 46(c).

While we agree with surety that the limits of surety's obligation are as set forth in the bail bond, and that changes to the bond without notice to the surety releases its obligation, *Stern v. Sawyer*, 78 Vt. 5, 11, 61 A. 36, 39 (1905), "[n]othing in the appearance bond obligates the court to inform surety of defendant's required appearances or of any change in his release conditions." *Chatfield*, 173 Vt. at 107, 787 A.2d at 1250. Rather, "the responsibility to learn of defendant's required appearances lies squarely with surety." *State v. Marsh*, 173 Vt. 531, 532, 789 A.2d 939, 942 (2001) (mem.). The bond obligated surety to " 'know when and where the defendant is to appear' [and] also makes clear that if surety 'should ever become concerned about the above responsibilities, the defendant may be surrendered to the Court and bail returned according to Title 13 V.S.A. § 7526.' " *Chatfield*, 173 Vt. at 106, 787 A.2d at 1249 (internal citations omitted).

Surety's argument that the court increased the risk to surety, and released surety's obligation under the bond, by failing to make specific findings in its order to continue defendant's conditions of release pending sentencing is without merit. Rule 46(c) establishes the court's procedure for reviewing conditions of release following the adjudication of guilt. It reads in pertinent part:

(c) Release Pending Sentence and Notice of Appeal or Pending Appeal. Upon an adjudication of guilt, the trial judge shall review the terms and conditions of release and may terminate them or may continue or alter them pending sentence or pending notice of appeal . . . . In reviewing the terms and conditions of release under this subdivision, a judge shall consider the factors set forth in 13 V.S.A. § 7554(b), as well as the defendant's conduct during the trial and the fact of conviction. Any denial of or change in the terms of release shall be reviewable in the manner provided in 13 V.S.A. §§ 7554 and 7556 for pretrial release.

V.R.Cr.P. 46(c). While this rule requires the court to make certain determinations in its review of conditions, it does not require the court to make specific findings on the record. But cf. 13 V.S.A. § 7554(d)(2) (where a person applies for review of their conditions of release, and the court maintains the conditions, it must make findings on the record, either written or oral, that there is a reasonable basis for the conditions). Here, the court set the sentencing hearing, and found that the "same conditions that were imposed are in effect until then." The court's determination was sufficient.

*Affirmed.*

**Dooley, J.,** dissenting. The majority makes good policy sense and reaches the better result. For those reasons, I would join it if I thought our precedents allowed me to do so. Unfortunately, I conclude that the settled law requires us to release the surety in this case.

The majority's construction of the agreement simply reads out of it the opening and most importance sentence of the surety's agreement, rendering mean-

ingless the statement that the security agrees to secure defendant's appearance "pending trial." At a minimum, this language makes the agreement ambiguous, and this ambiguity should be construed against the party that drafted it — in this case, the State. I therefore dissent.

As the majority states, when construing the agreement, this Court must give effect to each material term so, where possible, the contract reads as an integrated whole. *In re Hood*, 156 Vt. 412, 416, 592 A.2d 907, 909 (1991); *Jackson v. Rogers*, 120 Vt. 138, 140, 134 A.2d 620, 622 (1957). This maxim, however, does not give us free reign to ignore material terms when such terms cannot be harmonized with the rest of the contract. *Jackson*, 120 Vt. at 141, 134 A.2d at 622 ("No provision is to be wholly disregarded because inconsistent with other provisions unless no other reasonable construction is possible . . . ."). Indeed, we must assume that language in an agreement was included by the parties for a reason. *Blodgett Supply Co. v. P.F. Jurgs & Co.*, 159 Vt. 222, 232, 617 A.2d 123, 128 (1992). Here, we must assume that the State as drafter intentionally included the "pending trial" limitation in the primary statement of surety's obligation.

Although the majority finds them so, neither of the later statements in the agreement upon which the majority relies are directly inconsistent with the "pending trial" language. The statement that the surety provides security for defendant's attendance "at all court ordered proceedings" can be reconciled by construing it to cover pretrial and trial proceedings. The statement that any deposit will not be returned until the case is closed and defendant surrenders himself for sentencing would be relevant if this were a dispute over a deposit, which it is not.

Even if we find the obligations are in conflict, and cannot be reconciled, we must find that the agreement is ambigu-

ous. See *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988) ("Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable."). We must therefore follow another rule of contract construction: an ambiguous provision is a contract should construed against the party that drafted it. See *Trs. of Net Realty v. AVCO Fin. Servs.*, 147 Vt. 472, 475-76, 520 A.2d 981, 983 (1986). Here, the surety signed a standard-form security agreement, used in all courts as a matter of course and drafted by the court administrator's office, an agent of the State. As a result, we must construe the agreement against the State.

This Court has previously held that an ambiguity in a standard form drafted by the State should be construed against the State. *State v. Murray*, 159 Vt. 198, 205, 617 A.2d 135, 139 (1992). *Murray* is directly on point and controls here. It involved a deferred-sentence agreement contained on a standard State-drafted form that specified that the defendant was obligated to abide by the terms of the agreement for a limited period of time (three years). The State argued that other general language in the agreement gave the State the power to extend the duration of the probation. We rejected this argument and resolved the ambiguity against the State, stating, "We cannot conclude that the general reference to a further order of the court authorized the court to extend the duration of defendant's probation despite the very specific durational limit in the agreement . . . ." *Id.* The surety agreement in the present case similarly contains specific durational language — "pending trial" — laying out surety's obligation, followed by more general language — "at a scheduled court proceeding." As in *Murray*, we must resolve the ambiguity by having the specific control over the general.

This case should teach us to be more careful and precise in drafting judicial forms. We do not do justice, however, by placing the obligation created by a judicial branch error on a surety who never fairly agreed to that obligation.

I am authorized to state that Justice Skoglund joins in this dissent.