2000 OK 63

**STATE of Oklahoma, Plaintiff/Appellee,**

**v.**

**Danny Eugene VAUGHN and Charles Smith, Defendants/Appellants.**

**No. 90,999.**

Supreme Court of Oklahoma.

July 18, 2000.

Rehearing Denied Sept. 12, 2000.

Harry Scoufos, Thomas W. Condit, Sallisaw, Oklahoma, for appellants.

Charles L. Richardson, Tulsa County District Attorney, Fred J. Morgan, Assistant District Attorney, Tulsa, Oklahoma, for appellee.

BOUDREAU, Justice:

¶ 1 Two questions are presented on certiorari. First, did the trial court commit legal error when it determined that the State's filing of an amended information did not discharge the Bondsman's obligation on the bail bond? Second, did the trial court abuse its discretion in refusing to vacate its forfeiture order under 59 O.S. Supp.1995, 1332(C)(5)(b)? Because the trial court did not commit legal error and did not abuse its discretion in refusing to vacate its forfeiture order, we affirm.

## I.

### FACTS

¶ 2 According to officer Wayne Drewey, at about 11:25 a.m. on April 25, 1995, Danny Eugene Vaughn (Defendant) was in a meeting at Nichols and Brothers, Inc., 16 N.E. 16th, Tulsa, Oklahoma, when he became upset, pulled out a 9–millimeter semi-automatic pistol and began shooting. He hit Orville Nichols at least three times, shot at George Matetich, grazing his hairline, and pointed the gun at John Cobb.

¶ 3 The original information, filed April 27, 1995, charged Defendant with three felonies arising out of this transaction—shooting with intent to kill (concerning Orville Nichols), assault with a dangerous weapon (concerning Matetich) and feloniously pointing a weapon (concerning Cobb). At Defendant's arraignment, the trial court set the preliminary hearing for June 8, 1995. Charles Smith (Bondsman) executed a $120,000 bond to secure Defendant's release on the three felony counts set out in the original information. Defendant was released and he returned to his home state of California.

¶ 4 Without notice to or consent of the Bondsman, State of Oklahoma (State) filed an amended information against Defendant that added four more felony counts, all stemming from the original transaction. The amended information charged Defendant with one additional count of shooting with intent to kill (a second count concerning Orville Nichols) and three additional counts of assault with a deadly weapon (a second count concerning Matetich and new counts concerning Clifford Archer and Richard Nichols). The amended information increased Defendant's maximum possible sentence

from one life term plus twenty years to two life terms plus fifty years.

¶5 When Defendant voluntarily returned to Oklahoma and appeared for his preliminary hearing on June 8, 1995, he learned from his attorney that the State had filed the amended information the previous day. Because of the new charges, the trial court converted the scheduled hearing from a preliminary hearing to an arraignment. Defendant again pled not guilty. The trial court set the preliminary hearing for August 24, 1995, and continued the bond. The trial court also allowed Defendant's attorney, Lawrence W. Parish (Parish), to withdraw.

¶6 Defendant did not appear for his preliminary hearing on August 24, 1995. The trial court forfeited the bond and issued a bench warrant for Defendant's arrest. The Bondsman received notice of the forfeiture order on August 30, 1995.

¶7 The Bondsman filed a motion to vacate the forfeiture order. He contended his obligation as surety was discharged when the State materially increased his risk as surety without his knowledge or consent. He also contended the forfeiture order should be vacated because he demonstrated good cause for his failure to return Defendant to custody within ninety days. The trial court conducted an evidentiary hearing, issued Findings of Fact and Conclusions of Law, and refused to grant the requested relief. The Bondsman filed a motion for new trial which the trial court subsequently denied.

## II.

### STANDARD OF REVIEW

¶8 The standard of review of a trial court's decision denying a motion for new trial is whether the trial court abused its discretion. *Soldan v. Stone Video,* 1999 OK 66 ¶6, 988 P.2d 1268, 1269. An abuse of discretion occurs when a trial court exercises its discretion "to an end or purpose not justi-

fied by, and clearly against, reason and evidence. It is discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable." *Patel v. OMH Medical Center, Inc.,* 1999 OK 33 ¶20, 987 P.2d 1185, 1194.

## III.

### THE STATE'S FILING OF AN AMENDED INFORMATION DID NOT DISCHARGE THE BONDSMAN'S OBLIGATION ON THE BAIL BOND.

¶9 The Bondsman argues that his obligation as surety was discharged when the State materially increased his risk as surety without his knowledge or consent.

¶10 "A bail bond agreement is a contract of surety subject to rules of construction generally applicable to contracts." *People v. Tyler,* 797 P.2d 22, 24 (Colo.1990) (en banc); *State v. Indemnity Ins. Co. of North America,* 9 Kan.App.2d 53, 672 P.2d 251 (1984). In the context of a bail bond agreement, the surety is the bail bondsman, the principal is the defendant whose appearance is being guaranteed by the surety, and the creditor is the court or the state. *People v. Tyler, supra; State v. Weissenburger,* 189 N.J.Super. 172, 459 A.2d 693 (1983). By the written undertaking, the bondsman (surety) agrees to insure the appearance of the defendant (principal) before the court and, in the event the defendant fails to appear, to pay to the court (creditor) the amount of money specified in the order fixing bail.

¶11 When a bondsman enters into a contract of surety, he or she undertakes a bargained-for, calculated risk that the defendant will fail to appear at the time and place designated in the bond. If the State, without notice to or without the consent of the bondsman, *alters the terms of the bond agreement in a manner that materially increases the bondsman's risk,* the alteration operates as a discharge of the bondsman's obligation.[1]

---

1. This is in accordance with well-settled rules pertaining to alteration of surety agreements. *See Reese v. United States,* 76 U.S. (9 Wall.) 13, 22, 19 L.Ed. 541 (1869); *see also* Restatement of Security § 128(b)(i), at 341 (1941) ("Where, without the surety's consent, the principal and the creditor modify their contract ... the compensated surety is discharged if the modification materially increases his risk."); Stearns, Law of Suretyship § 6.3, at 109 (5th ed. 1951) ( "In order to discharge the surety, the alteration of

This is because a bondsman's agreement to assume one risk does not create a duty on the bondsman to assume a materially different risk. *Rodriquez v. People*, 191 Colo. 540, 554 P.2d 291 (Colo.1976)

¶ 12 If an alteration of a bond agreement is to discharge the bondsman's obligation, it must be one that is material and it must be made without the bondsman's knowledge or consent An alteration is material when it changes the nature of the contract by placing the bondsman in a substantially different position than he or she occupied before the change was made. *See, generally,* Restatement of Security § 128(b)(i); Stearns, Law of Suretyship § 6.3; *First Nat'l Bank of Anthony v. Dunning*, 18 Kan.App.2d 518, 855 P.2d 493, 496 (1993).

¶ 13 The facts relating to the filing of the additional charges in the case in controversy are not in dispute. Under such circumstances, the question of whether an alteration is material becomes one of law. Issues of law are reviewed *de novo*. Under this standard, the appellate court conducts a plenary, independent, and non-deferential re_examination of the lower court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100.

¶ 14 A bondsman assumes the risk of the prosecutorial strategy choices that would lead to increasing the number of charges for the same act or occurrence that is the subject of the initial appearance bond. Accordingly, when the State adds more charges in the same class as the original charges, the change is not a material one but is, instead, a change that falls within the ambit of the risk assumed by the bondsman from the beginning.

¶ 15 In the instant case, the new charges originated from the same transaction and were in the same class as the original charges—the State merely added one more count of shooting with intent to kill and three

more counts of assault with a deadly weapon. *See, e.g., United States v. Casey*, 671 F.2d 975 (6th Cir.1982) (adding two counts of "possession with intent to sell" to a multi-count indictment that already included more serious narcotics charges did not materially increase risk of flight).

¶ 16 In conclusion, the amended information did not materially increase the Bondsman's bargained-for risk. The trial court did not commit legal error when it determined that the State's filing of an amended information did not discharge the Bondsman's obligation on the bail bond. Accordingly, we cannot say the trial court abused its discretion in denying the Bondsman's motion for new trial on this issue.

IV.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO VACATE THE FORFEITURE ORDER.

¶ 17 The Bondsman also argues the trial court abused its discretion in refusing to vacate the forfeiture order under 59 O.S. Supp.1995, 1332.[2]

¶ 18 The purpose of bail is to secure the appearance of the defendant before the court until judgment and sentence is pronounced. *Gibson v. State*, 1982 OK 151, 655 P.2d 1028, 1029. It is not designed to enrich the public coffers. *Tri-State Bonding Co. v. State*, 263 Ark.620, 567 S.W.2d 937 (1978) (en banc). Accordingly, the Oklahoma statutes confer upon the judiciary the power to grant relief from a bond forfeiture under a variety of circumstances. 59 O.S. Supp.1995, 1332.

¶ 19 The 1995 version of § 1332(C)(5) provides in pertinent part:

5. The court may, in its discretion, vacate the order of forfeiture and exonerate the bond where good cause has been shown for:

a. the defendant's failure to appear, or

the suretyship contract without [the surety's] consent must be material.'').

**2.** The applicable version of this statute became effective November 1, 1995. *See* 1995 Okla. Sess. Laws, ch. 357, § 5.

b. the bondsman's failure to return the defendant to custody within the required ninety (90) days.

¶ 20 Prior to 1995, the phrase "for good cause shown" related exclusively to a showing of good cause for the defendant's failure to appear. *State v. Fish*, 1987 OK 128, 747 P.2d 956; *State v. Ebenhack*, 1985 OK CIV APP 47, 748 P.2d 538. Due diligence on the part of the bondsman in returning the defendant to custody was an insufficient basis for setting aside a forfeiture.[3]

¶ 21 The 1995 amendment to § 1332 expanded the grounds for establishing good cause. Under the amended version of § 1332(C)(5), the "good cause" requirement may be satisfied not only by presenting evidence of excuse for the defendant's failure to appear, but also by presenting evidence of excuse for the "bondsman's failure to return the defendant to custody within the required ninety days."

██ ¶ 22 Subsection 1332(C)(5)(b) allows the trial court to determine whether a bondsman has shown good cause for his or her failure to return the defendant to custody within ninety days and, if good cause is shown, gives the trial court discretion to vacate the forfeiture order.[4] In exercising its discretion, the trial court must not act arbitrarily or unreasonably. *Patel, supra.* The trial court is to consider all pertinent factors, some of which include:

(a) whether the defendant has been returned to custody and, if so, whether the bondsman's efforts assisted in the defendant's return;

(b) the nature and extent of the bondsman's efforts to locate and return the defendant to custody;

(c) the length of the delay caused by the defendant's non-appearance;

(d) the cost and inconvenience to the government in regaining custody of the defendant;

(e) the stage of the proceedings at the time of defendant's non-appearance; and

(f) the public interest and necessity of effectuating defendant's appearance.

This list of factors is illustrative, not exhaustive.[5] No one factor in and of itself is determinative and we do not prescribe the weight to be given any factor.

██ ¶ 23 The burden of showing facts warranting relief from forfeiture is on the party seeking such relief. *State v. Buckle*, 4 Kan.App.2d 250, 604 P.2d 743 (1979). In the instant case the Bondsman contends he met his burden by presenting evidence of his efforts to locate Defendant after the forfeiture. Among other things, the Bondsman hired bounty hunters who conducted searches in three states. The Bondsman also testified he expended approximately $50,000.00 trying to locate Defendant. Although his efforts were unsuccessful, he essentially argues that a mere showing of due diligence on his part in attempting to secure Defendant's appearance is sufficient to exonerate the bond under § 1332(C)(5)(b). He argues the trial court abused its discretion when it determined otherwise. We disagree.

¶ 24 In the instant case, the trial court carefully examined the evidence. The evidence tending to support relief from the for-

---

**3.** In *Fish*, we said "the conduct that must be satisfactorily excused relates only to the conduct of the principal, not to the bondsman's good faith effort to secure the appearance of the principal. The sole defenses for failure to appear are act of God, act of obligee, or an act of law, and when none of these conditions [is] present, no defense is presented sufficient to set aside a bond forfeiture." *Id.* at 958.

**4.** Not all of the statutory provisions for relief from forfeiture are *discretionary.* For example, § 1332(C)(2) *mandates* relief when the defendant is returned to custody within ninety days after the bondsman receives notice of the forfeiture.

Similarly, § 1332(D)(2) *mandates* relief when certain statutory conditions have been met within 180 days after notice.

**5.** A review of bond forfeiture statutes in other states reveals that the language of 59 O.S. Supp. 1995, 1332(C)(5)(b) is unique. Other jurisdictions have, however, considered similar factors in their determination of good cause for relief from bond forfeiture. *See, e.g., State v. Mercado*, 329 N.J.Super. 265, 747 A.2d 785 (2000); *State v. Hedrick*, 204 W.Va. 547, 514 S.E.2d 397 (1999).

feiture order includes the Bondsman's significant efforts to locate the Defendant, the fact that the proceedings were at an early stage when Defendant fled, and the fact that Defendant had been returned to custody by the time of the evidentiary hearing on the Bondsman's motion to vacate.[6] The evidence against vacating the order of forfeiture includes the fact that Defendant's return to custody was not a result of the Bondsman's efforts (it was the result of Defendant's voluntary surrender), the fact that the delay caused by Defendant's non-appearance was substantial (more than two years), and the fact that the charges against Defendant were serious.

¶ 25 The trial court, in exercising its discretion under § 1332(C)(5), determined the Bondsman failed to establish good cause to vacate the forfeiture order. Case law imposes upon the appellate courts the obligation to accord substantial deference to the exercise of discretion by the trial court, and to reverse only if the trial court made a clearly erroneous decision against reason and evidence. *Able v. Tisdale,* 1980 OK 161, 619 P.2d 608. Although this deferential standard does not relieve appellate courts of their duty to review the exercise of discretion, it does mean the trial court's decision will not be disturbed merely because we might have reached a different decision. Accordingly, we conclude the trial court did not abuse its discretion in refusing to vacate the order of forfeiture or in denying the Bondsman's motion for new trial on this issue.

## V.

## CONCLUSION

¶ 26 The trial court did not commit legal error when it determined that the State's filing of the amended information did not materially increase the Bondsman's bargained-for risk. The trial court did not abuse its discretion in refusing to vacate the forfeiture order under 59 O.S. Supp.1995, 1332(C)(5)(b), and the trial court did not

abuse its discretion in denying the Bondsman's motion for new trial.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS, DIVISION I, VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.**

¶ 27 HARGRAVE, V.C.J., and LAVENDER, OPALA, WATT, BOUDREAU, JJ., concur.

¶ 28 SUMMERS, C.J., and HODGES, KAUGER, WINCHESTER, JJ., dissent.

---

**6.** About two years after Defendant's failure to appear, he voluntarily returned to Oklahoma and surrendered. He pled guilty to three of the seven counts and was sentenced to eleven years in state prison. The other four counts were dismissed as part of the plea bargain.