2001 OK CIV APP 1

**STATE of Oklahoma, Appellee,**

v.

**Alberto RAMOS, Defendant,**

and

**Miguel Hamilton, Appellant.**

**No. 90,909.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 12, 2000.

Robert H. Macy, District Attorney, Cheryl L. Cerda, Gretchen Crawford, Assistant District Attorneys, Oklahoma City, for Appellee.

Donald D. Jackson, Jackson Law Firm, Oklahoma City, for Appellant.

## OPINION

GOODMAN, C.J.

¶1 This is Miguel Hamilton's (Bondsman) appeal from the trial court's January 3, 1998, order denying Bondsman's motion to exonerate a previously forfeited bail bond pursuant to the Bail Bondsman Act, 59 O.S. 1991 and Supp.2000, §§ 1301 through 1340(Act). The trial court found Bondsman had failed to return Alberto Ramos (Defendant) to custody as that phrase is defined by 59 O.S. Supp.2000, § 1332(C)(3)(d), and further found that "Mexican documents are inherently unreliable." The trial court denied Bondsman's motion to exonerate the bond. Based upon our review of the facts and applicable law, we affirm.

### Facts

¶2 Defendant was arrested and charged with multiple drug-related counts. Bondsman posted bail in the amount of $52,000 on August 26, 1996. Defendant failed to appear in court June 2, 1997, and the bond was subsequently forfeited. On January 9, 1998, Bondsman filed a motion to set aside the forfeiture and exonerate the bond. Bondsman alleged that Defendant was imprisoned in Mexico and therefore pursuant to § 1332(C)(3)(d), Bondsman had shown Defendant was incarcerated and was thus entitled to an exoneration of the bond. The State of Oklahoma objected. The trial court entered an order filed January 30, 1998, denying Bondsman's motion. Bondsman appeals. We affirm.

### Analysis

¶3 Title 59 O.S. Supp.2000, § 1332, in relevant part:

C. 1. The bail bondsman shall have ninety (90) days from receipt of the order and judgment of forfeiture from the court clerk or mailing of the notice if no receipt is made, *to return the defendant to custody.*

. . . .

3. For the purposes of this section, *return to custody* shall mean:

. . . .

d. arrest or incarceration of the defendant in *any other jurisdiction* provided, the bondsman has requested that a hold be placed on the defendant in the jurisdiction wherein the forfeiture lies, and has guaranteed reasonable travel expenses for the return of the defendant.

(Emphasis added.)

¶4 Bondsman presented the trial court with evidentiary material, including a Spanish-language letter from a Mexican prison official, that Defendant was serving a 9–year sentence in Chilpancingo, Mexico. Bondsman's motion contends in relevant part:

4. That the defendant is entered on [the National Crime Information Center] and bondsman has placed a hold guaranteeing payment of expenses incurred by the sheriff to return defendant to this jurisdiction;

5. Title 59 § 1332 C(3)(d) states that the court shall vacate the forfeiture and exonerate the bond if the defendant has been arrested or incarcerated in any other jurisdiction, provided the bondsman has requested that a hold be placed of the defendant in the jurisdiction wherein the forfeiture lies, and has guaranteed reasonable travel expenses for the return of the defendant.

¶5 The trial court's order held:

Court bases it's [*sic*] order upon the position that return to custody of a defendant by a bondsman as defined in Title 59 O.S. § 1332(C)(3)(d) which states that "ar-rest or incarceration of a defendant in any other jurisdiction provided the bondsman requested a hold be placed on the defendant in the jurisdiction wherein the forfeiture lies, and has guaranteed reasonable travel expenses for the return of the defendant", does not apply to this defendant who was incarcerated in a Mexican Prison at the time forfeiture was entered and has remained incarcerated since that day. The Court also felt that Mexican documents are inherently unreliable and based its decision on that ground also.

■ ¶6 We are thus presented with the following issue: Does the phrase "incarceration of a defendant in any other jurisdiction" mean incarceration only in the United States, or does the incarceration of Defendant in Mexico satisfy the statute?

¶7 Mexico is a sovereign nation. Jurisdiction is defined as:

"the authority by which court's and judicial officers take cognizance of and decide cases . . . . It exists when court has cognizance of class of cases involved, proper parties are present, and point to be decided is within powers of court . . . . the geographic area in which a court has power or types of cases it has power to hear." Blacks Law Dictionary 766 (5th ed.1979).

■ ¶8 Under any of these definitions, Mexico cannot be construed to be a jurisdiction over which the Oklahoma County District Court can exercise its judicial powers either directly or pursuant to the full faith and credit clause of the United States Constitution.[1] The primary purpose of the Act is to secure the appearance of a delinquent defendant for trial. This is accomplished by giving a bondsman a limited opportunity to effect the return of a delinquent defendant for trial and thus exonerate the forfeited bond. The Act assures that an incarcerating authority will, upon proper notice, detain a defendant long enough after his release from

---

1. We note the United States and Mexico are parties to a 1978 extradition treaty. *See* Extradition Treaty Between the United States of America and the United Mexican States, 31 U.S.T. 5059. However, Mexico refuses to extradite American citizens facing capital charges in this country. *See* H. Res. 381, Congressional Record Septem-ber 15, 1998. Nor will Mexico extradite its nationals to the United States to face pending charges. The exercise of American judicial authority over persons located in Mexico is subject to international treaties, not the jurisdiction of a district court.

incarceration for a bondsman to return the defendant to the jurisdiction where the forfeiture occurred.

■ ¶ 9 In the case in controversy, even with notice, Mexico will not permit the return of Defendant to the United States for trial, thus frustrating the primary purpose of the Act. Because the primary purpose of the Act cannot be accomplished due to Mexican national policy,[2] exoneration of a forfeited bond—predicated upon accomplishing the primary purpose of the Act—cannot be granted. Because Bondsman cannot return Defendant to Oklahoma County to further the purpose of the Act, the Act cannot afford Bondsman relief. For this reason alone, we find the phrase "any other jurisdiction" as found in § 1332(C)(3)(d) does not include sovereign nations such as Mexico. Bondsman's proof[3] that Defendant is in a Mexican jail does not constitute "return to custody" as defined by § 1332(C)(3)(d) and therefore Bondsman is not entitled to exoneration of his forfeited bond. The trial court correctly refused to exonerate the bond.

■ ¶ 10 Bondsman further refers to the entry of Defendant's name into the N.C.I.C. computer as another basis for exoneration. Bondsman's motion contained a letter, filed September 15, 1997, with the Oklahoma County Sheriff's Department, styled "N.C.I.C. Entry Affidavit of Intent." This is a clear reference to § 1332, which states:

4. In addition to the provisions set forth in paragraphs 2 and 3 of this subsection, the court may vacate the forfeiture and exonerate the bond in any felony case in which:

  a. the bondsman has requested in writing of the sheriff's department in the county where the forfeiture occurred that the defendant be entered into the computerized rec-

ords of the National Crime Information Center, *and*

  b. the request has not been honored within thirty (30) business days of the receipt of the written request by the department. (Emphasis added.)

¶ 11 We hold § 1332(C)(4) does not apply by its own terms because there is no evidentiary material suggesting the request was not honored within 30 days. Because we find § 1332 does not apply by its own terms, we need not address the trial court's finding that Mexican documents are inherently unreliable.

¶ 12 AFFIRMED.

STUBBLEFIELD, J., and REIF, J., concur.

---

**2.** *See* n. 1 infra.

**3.** Section 1332 requires Bondsman to request that a hold be placed on Defendant wherein the forfeiture lies. The only evidentiary material before the trial court was a copy of Defendant's fingerprint card from Mexico; the September 15, 1997, N.C.I.C. entry affidavit; a fax cover sheet purporting to verify the authenticity of the Mexi-

can documents presented; and a May 21, 1997, letter, in Spanish, from a Mexican prison official noting Defendant's incarceration in a Mexican prison. There is no copy of the hold placed on Defendant by Bondsman filed in Oklahoma County. Bondsman's quest for relief is therefore fatally flawed.