2008 OK CIV APP 89

**STATE of Oklahoma, Plaintiff/Appellee,**

**v.**

**Francisco SALCEDO–RUBIO, Defendant,**

**and**

**Affordable Bail Bonds, Inc. and Roberta Dampf-Aguilar, Appellants.**

**No. 104,796.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 25, 2008.

Fred J. Morgan, Assistant District Attorney, Tulsa, OK, for Plaintiff/Appellee.

Bruce A. McKenna, Brandon J. Burris, Glendening, McKenna & Prescott, Tulsa, OK, for Appellants.

ROBERT DICK BELL, Judge.

¶ 1 Appellants, Affordable Bail Bonds, Inc. and Roberta Dampf–Aguilar, sureties on appearance bonds posted for Defendant, Fran-

cisco Salcedo–Rubio, (hereinafter "Surety"), appeal from the trial court's denial of Surety's motion to vacate the bond forfeiture order entered when Salcedo–Rubio failed to appear for a scheduled hearing. For the reasons set forth below, we affirm the trial court's judgment.

¶ 2 On April 17, 2006, Salcedo–Rubio, a legal resident of the United States but a Mexican citizen, was charged in Tulsa County District Court with four felony counts, including two counts of trafficking in illegal drugs. Surety posted bail of over $50,000.00 and Salcedo–Rubio was released from custody. When Salcedo–Rubio failed to appear at his May 4, 2006, initial arraignment, bench warrants were issued for his arrest and the trial court ordered his bonds forfeited. The instant appeal arises from the trial court's denial of Surety's motion to vacate the trial court's bond forfeiture order.

¶ 3 Surety's efforts to locate and retrieve Salcedo–Rubio began within a week of the bond forfeitures. On May 9, 2006, Surety filed a "Guarantee to Pay Reasonable Transportation Costs" in connection with apprehending the defendant and returning him to the custody of law enforcement officials. The execution of such guarantee results in the registration of a criminal defendant as a fugitive from justice in the National Crime Information Center Database. Agents for Surety then conducted interviews and/or surveillance of the bond co-signer and of Salcedo–Rubio's girlfriend. In July 2006, after confirming that Salcedo–Rubio had returned to his native country, Surety dispatched an agent to Mexico to attempt to retrieve him, advancing the agent $4,000.00 for his efforts. The agent was ultimately unsuccessful in securing Salcedo–Rubio's voluntary return to the United States. Both Mexican law enforcement officials and officials with the Mexican Embassy in El Paso, Texas, indicated to Surety's agent they could not cooperate in any efforts to apprehend Salcedo–Rubio in the absence of extradition papers. A Deputy United States Marshal advised Surety's agent that he should contact the Tulsa County District Attorney's Office to coordinate extradition efforts.

¶ 4 In early August 2006, Surety's agent contacted Tulsa County Assistant District Attorney Fred Morgan and inquired about extradition of Salcedo–Rubio. The agent claimed Morgan refused to seek Salcedo–Rubio's extradition because the district attorney's office had neither the time nor the staff to complete the paperwork prior to August 9, 2006, the deadline for returning Salcedo–Rubio to custody within the 90-day period set forth in 59 O.S.Supp.2002 § 1332. The agent testified Morgan even rejected his offer to help complete the extradition paperwork. Morgan maintains he simply informed the agent that, in his experience, extraditing someone from Mexico requires voluminous amounts of paperwork and takes from several months to over a year to obtain a provisional arrest warrant. Although no extradition request was ever filed, the trial court found no intentional wrongdoing on the part of the district attorney's office.

¶ 5 Surety makes essentially two arguments on appeal. First, Surety contends the trial court abused its discretion in declining to vacate the bond forfeiture order. Second, Surety asserts the district attorney's failure to institute extradition proceedings materially increased the Surety's risk exposure, warranting exoneration of the bonds. We reject both contentions.

¶ 6 This Court reviews a trial court's decision to vacate a bond forfeiture using an abuse of discretion standard. *State v. Torres,* 2004 OK 12, ¶ 10, 87 P.3d 572, 579. The Supreme Court has held:

[D]iscretion is abused when a trial court makes a clearly erroneous conclusion and judgment contrary to reason and evidence, when it exercises its discretion to an end or purpose not justified by, and clearly contrary to, reason and evidence, and when discretion is employed on untenable grounds or for untenable reasons, or where its exercise is manifestly unreasonable.

*Id.* Appellate courts are "obligat[ed] to accord substantial deference to the exercise of discretion by the trial court, ..." *State v. Vaughn,* 2000 OK 63, ¶ 25, 11 P.3d 211, 217. Finally, this Court may not disturb the trial court's conclusion "merely because we might have reached a different decision." *Id.*

¶ 7 Title 59 O.S. Supp.2002 § 1332(A) states that a trial court "shall" order a bond forfeited when a defendant breaches a bond obligation.[1] Subsection 1332(C)(2) provides the court "shall" vacate any forfeiture and exonerate a bond where the defendant is returned to custody in the jurisdiction where the forfeiture occurred within the ninety day period set forth in subsection (C)(1).[2] At issue in this case is subsection 1332(C)(5), which states in relevant part:

> The court may, in its discretion, vacate the order of forfeiture and exonerate the bond where good cause has been shown for:
>
> * * *
>
> b. the bondsman's failure to return the defendant to custody within ninety (90) days.

■ ¶ 8 Factors to be considered by the trial court in determining whether "good cause" has been shown within the meaning of § 1332(C)(5) include:

(a) whether the defendant has been returned to custody and, if so, whether the bondsman's efforts assisted in the defendant's return;

(b) the nature and extent of the bondsman's efforts to locate and return the defendant to custody;

(c) the length of the delay caused by the defendant's non-appearance;

(d) the cost and inconvenience to the government in regaining control of the defendant;

(e) the stage of the proceedings at the time of defendant's non-appearance; and

(f) the public interest and necessity of effectuating defendant's appearance.

*Vaughn,* 2000 OK 63 at ¶ 22, 11 P.3d at 216. The above list of factors is illustrative and not exhaustive. *Id.* "No one factor in and of itself is determinative and we do not prescribe the weight to be given any factor." *Id.* "The burden of showing facts warranting

relief from forfeiture is on the party seeking such relief." *Id.* at ¶ 23, 11 P.3d at 216.

■ ¶ 9 Surety's initial argument mirrors that made by the bondsman in *Vaughn.* There, the bondsman essentially argued that a mere showing of due diligence on his part in attempting to secure the fugitive defendant was sufficient to warrant exoneration of the bonds under § 1332(C)(5)(b). The evidence in *Vaughn* showed the bondsman expended significant efforts to locate the defendant (including spending $50,000.00), the proceedings were at an early stage when the defendant fled, the defendant had been returned to custody when the vacation motion was heard, the defendant's return to custody was not the result of the bondsman's efforts, the delay caused by the defendant's non-appearance (more than two years) was substantial, and the charges against the defendant were serious. *Id.* at ¶ 24, 11 P.3d at 216–7. The trial court determined the bondsman failed to establish good cause to vacate the bond forfeiture and the Supreme Court affirmed. *Id.* at ¶ 25, 11 P.3d at 217.

¶ 10 Considering the *Vaughn* factors set forth above, the present record reveals Salcedo–Rubio has never been returned to custody, Surety expended significant efforts to locate the defendant, the length of the delay caused by the defendant's non-appearance (more than one year at the time of the hearing) was substantial, the proceedings were at an early stage at the time of the defendant's non-appearance, and the charges against Salcedo–Rubio were serious. There is no evidence in the present record regarding any government efforts to regain custody of the defendant.

■ ¶ 11 An initial comparison of the instant facts with those discussed in *Vaughn* lead us to conclude the trial court did not abuse its discretion in refusing to set aside the bond forfeitures. However, Surety argues this Court should also consider two other factors before making our decision: (1)

1. Section 1332 has since been amended in respects not relevant here. *See* 2007 Okla. Sess. Laws Ch. 97, § 1, eff. Nov. 1, 2007.

2. Subsection (C)(1) states, "The bail bondsman shall have ninety (90) days from receipt of the order and judgment from the court clerk or mailing of the notice if no receipt is made, to return the defendant to custody." In this case, Surety received official notice of the bond forfeitures on May 10, 2006.

the economic consequences of forfeiture and (2) the nature and extent of the district attorney's duties in connection with extradition. We dismiss Surety's first proposed additional factor out of hand. "When a bondsman enters into a contract of surety, he or she undertakes a bargained-for, calculated risk that the defendant will fail to appear at the time and place designated in the bond." *Vaughn*, 2000 OK 63 at ¶ 11, 11 P.3d at 214. Surety here undertook a calculated, bargained-for risk that Salcedo–Rubio would flee after being released from custody. The risk appears to be particularly increased in this case because Salcedo–Rubio is a Mexican citizen facing serious drug trafficking charges and Surety's power to recapture the defendant in Mexico is very limited. See *State v. Coronel*, 145 N.C.App. 237, 550 S.E.2d 561, 569 (2001) (sureties "aware that their power to capture defendants in Mexico was very limited, compared to their authority to do so in the United States"); *In re Paul's Bonding Co., Inc.*, 62 S.W.3d 187, 195 (Tenn. Crim.App.2001) ("If the [bondsman] did not know the difficulties inherent in recapturing fugitives who have fled to Mexico, it was the [bondsman's] business to obtain the relevant information prior to entering into bail bond agreements with Mexican citizens"). If Surety believed the economic consequences of forfeiture were too severe, it should not have posted Salcedo–Rubio's bonds in the first place.

██ ¶ 12 Surety's second proposed additional factor rests entirely upon its assertion that the government caused the bond forfeitures because it did not seek to extradite Salcedo–Rubio. As previously set forth, Surety did not initiate extradition discussions with the district attorney's office until early August 2006, just days before the 90–day deadline of § 1332 was set to expire. Under subsection 1332(C)(5)(b), Surety was obligated to show good cause for her "failure to return the defendant to custody *within ninety (90) days.*" (Emphasis added). The undisputed evidence reveals it would have taken the government from several months to more than a year just to obtain a provisional warrant for Salcedo–Rubio's arrest under the extradition procedures. It would therefore have been impossible to complete the extra-

dition process and return the defendant to custody in less than a week. Thus, the district attorney's failure/refusal to initiate extradition proceedings had no bearing whatsoever on Surety's failure to return Salcedo–Rubio to custody within 90 days of receiving notice of the bond forfeitures. We find no abuse of discretion.

██ ¶ 13 With respect to Surety's second proposition of error, we reiterate that a bail bond agreement is a contract where the bondsman is the surety, the defendant is the principal and the State is the creditor. *Vaughn*, 2000 OK 63 at ¶ 10, 11 P.3d at 214.

> If the State, without notice to or without the consent of the bondsman, *alters the terms of the bond agreement in a manner that materially increases the bondsman's risk,* the alteration operates as a discharge of the bondsman's obligation. This is because a bondsman's agreement to assume one risk does not create a duty on the bondsman to assume a materially different risk.

*Id.* at ¶ 11, 11 P.3d at 214–5 (emphasis in original, footnote omitted). "An alteration is material when it changes the nature of the contract by placing the bondsman in a substantially different position than he or she occupied before the change was made." *Id.* at ¶ 12, 11 P.3d at 215. Where the relevant facts are undisputed, "the question of whether an alteration is material becomes one of law." *Id.* This Court reviews questions of law *de novo. Id.*

¶ 14 Surety claims the district attorney's failure to institute extradition proceedings materially increased Surety's risk because such inaction made it impossible for Surety to return Salcedo–Rubio to custody. Similar arguments were made and rejected by bondsmen in *U.S. v. Escamilla*, 244 F.Supp.2d 760 (S.D.Tex.2003), and *People v. Bustamante–Payan*, 856 P.2d 42 (Colo.App. 1993). In both cases, the courts held that, because of the impossibility of recovering a Mexican national via international extradition, the government's failure or refusal to seek such extradition did not, in itself, constitute adequate grounds for exonerating the surety. *Escamilla*, 244 F.Supp.2d at 766

(evidence showed extradition of Mexican citizen to U.S. "practically impossible"); *Bustamante–Payan,* 856 P.2d at 45 (record established Mexico does not extradite its own nationals). A number of other courts, including Division 4 of this Court, have noted the difficulty, if not impossibility, of extraditing a Mexican citizen to the United States to face criminal charges. See *State v. Ramos,* 2001 OK CIV APP 1, ¶¶ 8–9, 43 P.3d 414, 416–7 (Mexico has national policy against extraditing its citizens to the United States to face pending charges); *In re Paul's Bonding Co., Inc.,* 62 S.W.3d 187, 195 (Tenn.Crim.App.2001) (noted unenforceability of extradition treaty between U.S. and Mexico); *People v. Ranger Ins. Co.,* 81 Cal.App.4th 676, 96 Cal.Rptr.2d 892, 896 n. 6 (2000) (noted "difficulty of extraditing Mexican citizens to the United States on anything but the most heinous of crimes").

¶ 15 In light of the above, we conclude the district attorney's failure to seek the extradition of Salcedo–Rubio, in itself, did not materially increase Surety's risk on the bail bonds. Given the extreme difficulty—if not impossibility—of extraditing a Mexican citizen from Mexico to face criminal charges in the United States, the fact the district attorney failed to initiate extradition proceedings did not place Surety in a substantially different position than it occupied before such failure occurred. Stated otherwise, any risk that Salcedo–Rubio would flee to Mexico and be difficult to recapture was not materially altered by the district attorney's inaction. The judgment of the trial court is affirmed.

¶ 16 AFFIRMED.

MITCHELL, V.C.J., and BUETTNER, P.J., concur.